<pre>
 1
 2
 3
 4
 5
 6
 7                    UNITED STATES DISTRICT COURT

 8               FOR THE EASTERN DISTRICT OF CALIFORNIA

 9
10   ROBERT WATTS, on behalf
     of himself individually and
11   all others similarly situated,

12                                    NO. CIV. S-08-1877 LKK/GGH
             Plaintiff,
13
         v.
14                                         O R D E R
     ALLSTATE INDEMNITY CO.,
15   an Illinois corporation, et al.,

16           Defendants.

17   _____/
</pre>

Plaintiff Robert Watts had an automobile insurance policy with defendant Allstate Indemnity Company.  His car was involved in an accident, after which, allegedly pursuant to the instructions in his car's manual, he sought replacement of the seatbelts and associated mechanisms.  Plaintiff alleges that this replacement should have been covered by his insurance policy, but that he was forced to pay for these repairs himself.  He brings this putative class action against Allstate Indemnity Company, Allstate Insurance Company, and Allstate Property and Casualty Insurance Company,

1

alleging breach of contract, insurance bad faith, breach of the implied covenant of good faith and fair dealing, fraud, a violation of California's Unfair Competition Law ("UCL"), and a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO").

Defendants have moved to dismiss all claims, or alternatively to stay proceedings. Defendants also move to strike portions of the complaint. Among defendants' arguments for dismissal or stay is the policy's inclusion of a provision allowing any party to demand an appraisal, and defendants' as-yet unfulfilled demand. Defendants claim that this appraisal provision is a type of arbitration agreement, and that plaintiff's failure to submit the matter to appraisal compels either dismissal or a stay pending appraisal.

# I. BACKGROUND

The following facts are taken from the allegations of the complaint and the documents referred to by the complaint. See Knievel v. ESPN, 393 F.3d 1068, 1076-77 (9th Cir. 2005); In re Silicon Graphics, Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999). Plaintiff's allegations are taken as true, for the purposes of this motion, with one exception explained below.

Plaintiff, a California resident, is a named insured under an automobile insurance policy issued by one or more of the defendants. The identities of defendants, and the relationships between them, are unclear. Plaintiff's First Amended Complaint ("FAC") named as defendants "Allstate Indemnity Company, an Illinois corporation; Allstate Insurance Company, an Illinois

corporation; [and] Allstate Property and Casualty Insurance Company, an Illinois corporation." The FAC's statement of jurisdiction refers to the first defendant as "Allstate Indemnity Corporation[, which] was incorporated in Delaware, and Defendants Allstate Insurance Company and Allstate Property and Casualty Insurance Company[, which] were organized in Illinois." Id. ¶ 4. The FAC's statement of the parties then reverts to naming the "Allstate Indemnity Company." Id. ¶ 11. Throughout the complaint, plaintiff uses "Allstate" to refer to all three defendants, without distinguishing between them. Finally, plaintiff's memorandum in opposition to the present motion alleges all three defendants "are part and parcel of the same corporation, the Allstate Corporation." The court follows plaintiff's practice of using "Allstate" to refer to all three defendants. Pursuant to this practice, all of plaintiff's allegations are made against each defendant.

Plaintiff purchased and/or renewed an auto policy from Allstate in late 2005. Id. ¶ 39. At that time and now, Allstate's standardized materials assured policyholders that "accidents happen," but that policyholders would "continue to feel the safety Allstate provided from the beginning." Id. ¶ 29. Allstate's slogan was and is "You're in good hands with Allstate."

When plaintiff renewed or purchased the policy, he received a copy of Allstate's auto policy and the "policy endorsement." Id. ¶ 39. Part VII of that policy addresses "Protection Against Loss to the Auto." It provides that "Allstate will pay for direct and

3

accidental loss to your insured auto . . from a collision with another object or by upset of that auto . . . ." Defs.' Ex. A, Policy, 18. In the event of loss, the insurer may choose to "pay for the loss in money, or [to] repair or replace the damaged or stolen property." Id. at 21. The accompanying "policy endorsement" contains terms and modifications specific to California insureds. This endorsement provides that the insurer's liability is limited to the lower of "the actual cash value" or "the cost to repair or replace" the damaged property, less the applicable deductible. Defs.' Ex. A, Policy Endorsement, 11. The policy bears the name "Allstate Insurance Company," whereas the policy endorsement and policy declaration bear the name "Allstate Indemnity Company."

The policy contains an appraisal provision, which provides that:

> Both [the policyholder] and Allstate have a right to demand an appraisal of the loss. Each will appoint and pay for a qualified appraiser. Other appraisal expenses will be shared equally. The two appraisers, or a judge of a court of record, will choose an umpire. Each appraiser will state the actual cash value and the amount of loss. If they disagree, they'll submit their differences to the umpire. A written decision by any two of these three persons will determine the amount of the loss.

Policy, 21. The policy does not explicitly state that appraisal is a precondition to suit. However, the policy provides that "[n]o one may sue us [Allstate] unless there is full compliance with all the policy terms." Id. at 22. The policy endorsement similarly

4

provides that "[n]o legal action may be brought against us until there has been full compliance with all the policy terms." Policy Endorsement, 8.

On March 29, 2006, plaintiff's insured vehicle was involved in a collision. FAC ¶ 42. The impact caused both the driver's and front passenger's seatbelts to lock and bear significant force. Id. ¶ 42. The car received damage warranting repair to the front bumper, a front door, headlamps, hood panels, condenser, radiator, and various other parts. Id. ¶ 47. In addition, the front passenger sustained a fractured rib, and the driver sustained serious neck injuries. Id. ¶ 42.

Plaintiff's FAC alleges that the impact of an accident reduces the effectiveness of a seatbelt because it elongates the webbing and damages related mechanisms. Id. ¶ 16. In recognition of these effects, the owner's manual for plaintiff's car states that "[i]f a seat belt is worn during a crash, it must be replaced by the dealer. A belt that has been worn during a crash may not provide the same level of protection in a subsequent crash." Id. ¶ 45.

Following the accident, plaintiff's vehicle was taken to an auto body shop for repairs. The repair shop prepared an estimate of the cost of the repairs on March 30, 2006, totaling $6,660.18. Id. ¶ 43. The next day, an Allstate appraiser prepared a "corrected" estimate, authorizing repairs at the cost of $6,534.77. Id. ¶ 44. The complaint does not explain the reason for the difference between the two estimates. The auto body shop completed these repairs in the following month. Id. ¶ 47. The final invoice

5

did not include costs for repair, replacement, or inspection of the seat belts.  Id.

Plaintiff believed that the collision damaged the seatbelts, and sent a letter to Allstate requesting that the seat belts and tensioners be replaced.  The FAC alleges that this letter was sent "during the course of the repairs."  Id. ¶ 52.  However, the FAC also alleges that the repairs were completed in April 2006, whereas defendants have provided a letter that apparently constitutes' plaintiff's sole communication on the subject, and this letter is dated September 18, 2007--seventeen months after the repairs were allegedly completed.  Decl. of Barbara Shunta, Ex. A.  This letter identifies "several concerns that [plaintiff] believe[s] need further repair."  Id.  Plaintiff noted that the side window was not operating correctly and that the headlights were misaligned. Plaintiff also requested "the airbag sensors be inspected to ensure that they are operating properly," and finally "that the seatbelt tensioners be replaced."  Id.

Allstate responded with a telephone conversation and then a letter.  Shunta Decl. Ex. B.  The letter states "As discussed unfortunately Allstate will not be able to assist you with the repair concerns that you are having with the body shop due to the shop that you used to repair your vehicle is not one of our referral shops. [sic] . . . You can file a complaint with the Bureau of Automotive Repair."  Id.  Plaintiff alleges that the effect of Allstate's actions was to refuse to provide coverage for the seatbelts.  FAC ¶ 53.  Throughout this dispute, Allstate did

not notify plaintiff of his right to invoke the appraisal process. Id. ¶ 54.

At some point thereafter, plaintiff replaced the seat belts at his own expense.  Id. ¶ 58.

Plaintiff alleges that Allstate's refusal to pay for seatbelt replacement was the result of "a uniform policy of refusing to pay for seat belt replacement and inspection in any Allstate-insured vehicle involved in an automobile accident," Id. ¶ 22.  Allstate acted to conceal this policy. Id. "Allstate . . . trained its employees to avoid writing the inspection or repair of seat belts into estimates for repair of vehicles involved in a collision." Id. ¶ 23.  Allstate allegedly notified repair shops of this policy. Id. ¶ 24.  Moreover, Allstate allegedly proactively dissuaded repair shops from inspecting or repairing seatbelts.  Id. ¶ 102(C).

Plaintiff filed this suit in the Northern District of California on February 29, 2008.  Defendants were served on March 27, 2008.  On April 30, 2008, Allstate requested an appraisal of plaintiff's vehicle.  To date, plaintiff has refused this request. On July 24, 2008, Judge Armstrong, acting sua sponte, ordered this case transferred to this district pursuant to 28 U.S.C. § 1404(a).

Plaintiff's FAC alleges six claims, for breach of contract, "insurance bad faith," breach of the implied covenant of good faith and fair dealing, fraud, unfair competition, and a conspiracy under RICO.  Plaintiff purports to represent a class including "any person insured by Allstate for any length of time from 1998 to the present who was involved in a collision in which automatic seat

belt tensioners activated, after which Allstate failed to underwrite the inspection and/or replacement of the seat belt in the vehicle."  FAC § 61.

Defendants move to dismiss all claims.  In the alternative, defendants move to strike all portions of the FAC referring to inspection of seatbelts, and to stay the case pending completion of an appraisal of vehicle at issue.

## II. MOTION TO DISMISS

### A.    Standard for a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

In order to survive a motion to dismiss for failure to state a claim, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 569 (2007).  While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 555.

The Supreme Court recently held that Federal Rule of Civil Procedure 8(a)(2) requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of entitlement to relief. <u>Id.</u> at 555 n.3.  Though such assertions may provide a defendant with the requisite "fair notice" of the nature of a plaintiff's claim, the Court opined that only factual allegations can clarify the "grounds" on which that claim rests. <u>Id.</u>  "The pleading must contain something more. . . than . . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." <u>Id.</u> at 555, quoting 5 C. Wright & A.

Miller, _Federal Practice and Procedure_, § 1216, pp. 235-36 (3d ed. 2004).[1]

On a motion to dismiss, the allegations of the complaint must be accepted as true. _See_ _Cruz v. Beto_, 405 U.S. 319, 322 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. _See_ _Retail Clerks Int'l Ass'n v. Schermerhorn_, 373 U.S. 746, 753 n.6 (1963). In general, the Complaint is construed favorably to the pleader. _See_ _Scheuer v. Rhodes_, 416 U.S. 232, 236 (1974), _overruled on other grounds by Harlow v. Fitzgerald_, 457 U.S. 800 (1982). Nevertheless, the court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. _W. Mining Council v. Watt_, 643 F.2d 618, 624 (9th Cir. 1981).

**B.   Analysis**

**1.   Breach of Contract**

A cause of action for breach of contract includes four elements: that a contract exists between the parties, that the plaintiff performed his contractual duties or was excused from nonperformance, that the defendant breached those contractual duties, and that plaintiff's damages were a result of the breach. _Reichert v. General Ins. Co._, 68 Cal. 2d 822, 830 (1968); _First_

---

[1] The holding in _Twombly_ explicitly abrogates the well established holding in _Conley v. Gibson_ that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957); _Twombly_, 550 U.S. at 560.

Commercial Mortgage Co. v. Reece, 89 Cal. App. 4th 731, 745, (2001). In this case, plaintiff has alleged these elements. The policy was a contract. Plaintiff's obligation was to pay premiums and notify Allstate of claims, which he did. Allstate was obligated to "pay for direct and accidental loss to your insured auto." Policy at 18. The damage to the seatbelts, if sustained, was such a loss, for which Allstate failed to pay. Denial of that payment constituted damage to plaintiff.

Neither party, however, contents itself with this analysis. Plaintiff argues that Allstate's obligation was to inspect and/or repair the seatbelts, rather than to pay a certain cost. Allstate responds that the language of the policy does not impose such obligations. Allstate further argues that the fact that an appraisal has not been conducted compels dismissal of this claim (if not all claims).

### a. What Were Allstate's Obligations?

Plaintiff's complaint attributes a variety of duties to Allstate. In the breach of contract claim, plaintiff alleges that under the policy, Allstate has a duty to "repair or replace Plaintiff's vehicle to its physical condition at the time of loss," FAC ¶ 77, and that Allstate breached the policy by "fail[ing] to inspect and/or replace the seat belts." FAC ¶ 79. Elsewhere in the complaint, plaintiff also alleges that Allstate breached the policy by refusing to pay for such repairs. FAC ¶¶ 23, 25. Thus, the complaint implies three potentially distinct contractual

duties: a duty to repair or make safe; a duty to inspect;[2] and a
duty to pay for the cost of the loss.

Allstate's obligations are defined by the text of the policy.
Levy v. State Farm Mutual Automobile Ins. Co., 150 Cal. App. 4th
1, 7 (2007) (quoting Ray v. Farmers Ins. Exchange, 200 Cal. App.
3d 1411, 1415–1416 (1988)).  The policy provides that "Allstate
will pay for direct and accidental loss to your insured auto . .
. ."  Policy, 18.  The policy endorsement provides that Allstate's
liability--i.e., "loss"--is limited to the lesser of "the actual
cash value of the property or damaged part at the time of loss" or
"the cost to repair or replace the property or part to its physical
condition at the time of loss."   Policy Endorsement at 11.
Allstate argues that this language denotes a duty to pay for loss,
but that there is no duty to inspect or repair.

Before the cost of the loss can be paid, that cost must be
determined.  Someone will have to inspect the vehicle.  Allstate
argues that the insured bears responsibility for the initial

---

[2] The FAC alleges that Allstate breached the contract by
failing to inspect the seatbelts.  FAC ¶ 79. More generally, the
complaint uses derivatives of the term "inspect" over fifty times.
Nonetheless, plaintiff's memo in opposition declares that the "the
heart of this action" "is not Defendants' failure to inspect the
vehicle's seatbelts for damage; rather it is Allstate's failure to
ensure [that] Plaintiff's [vehicle] is safe by failing to replace
the seatbelts."  Opp'n, 10.  The following paragraph then attempts
to refute the "assert[ion] that as a matter of law [Defendants] owe
no duty to inspect Plaintiff's seatbelts."   Id.
It is unclear whether plaintiff actually intends to base a
claim for breach of contract specifically on failure to inspect the
vehicle.  Because Fed. R. Civ. P. 1 directs courts to construe
pleadings liberally, the court interprets the complaint as alleging
a duty to inspect.

valuation. Neither the language of the policy nor the cases cited by Allstate demonstrate that, as a matter of law, this must be the case.

Although a California court has held that an insured bore responsibility for inspection, this holding was based on specific language not present in the instant policy, and did not establish a general rule. Cmty. Assisting Recovery v. Aegis Sec. Ins. Co., 92 Cal. App. 4th 886, 893 (2001). Aegis Sec. interpreted the "standard form of fire insurance policy" established by Cal. Ins. Code § 2071(a). That form provides that in the event of loss, the insured shall "furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed." Id. at 3.[3] Based on this language, Aegis Sec. concluded that "the *insured* carries the initial responsibility to determine" the amount of loss. 92 Cal. App. 4th at 894 (emphasis in original). In this case, no comparable policy language allocates the burden for valuation.

Two federal appellate decisions have held that language similar to that at issue "arguably" imposes a duty to inspect on the insurer, although each decision upheld the dismissal of the respective plaintiffs' claims for other reasons. Sonnier v. State Farm Mut. Auto. Ins. Co., 509 F.3d 673, 676 n.2 (5th Cir. 2007), Hall v. State Farm Mut. Auto. Ins. Co., 215 Fed. Appx. 423, 429

---

[3] This form is included in the statute.

(6th Cir. 2007).  In Sonnier, the policy stated that the insurer's "limit of liability 'for *loss* to property or any part of it is the lower of' the automobile's actual cash value or the cost of repair or replacement."  509 F.3d at 675 (quoting the policy).  Plaintiffs in that case alleged that this language obligated the insurer to inspect the seatbelts after an accident.  Id. at 674, 676.  The court held that "[i]f there were actually something wrong with the seatbelts, it would be arguable that State Farm would have to pay for the tests necessary to determine just what that was and how to fix it as part of the costs of repairing the seatbelt."  Id. at 676 n.2.  However, the auto body shops plaintiffs used had not concluded that such inspections were necessary, and plaintiffs had "refused to allege that there is in fact anything wrong with the seatbelt (or even that there seemed to be something wrong)."  Id. In light of this refusal, the court upheld dismissal of plaintiff's claim for breach of a contractual duty to inspect the seatbelts.

In an unpublished decision, the Sixth Circuit also held that while similar policy language could impose on insurers a duty to respect, dismissal of plaintiff's claim was appropriate for other reasons.  Hall, 215 Fed. Appx. at 429.  The policy stated that the insurer "will include in the estimate parts sufficient to restore the vehicle to its pre-loss condition."  Id. 428 (quoting the policy).  The policy explicitly provided three ways in which the estimate could be determined: agreement of the parties, a competitive bid approved by the insurer, or a written estimate based upon the prevailing competitive price.  Id. at 429.  The

court held that it "is not unreasonable" to conclude that when valuation was set under the final of these options, the insurer had an obligation to investigate the vehicle, including the seatbelts. Id. Nonetheless, the court upheld dismissal, because the complaint alleged that the estimate actually used in that case was provided by an auto body shop of plaintiff's choosing, rather than by the insurer. Id. at 430. Thus, plaintiff had not alleged facts triggering the insurer's potential duty to inspect.

None of these cases demonstrate that the plaintiff here has not alleged facts giving rise to a duty for Allstate to inspect the seatbelts. No policy provision explicitly places the burden of inspection on the insured, plaintiff alleges actual damage to the seatbelt, and plaintiff alleges that Allstate participated in setting the estimate. Based on these allegations, the court cannot conclude that as a matter of law, Allstate did not have an obligation to inspect the seatbelts.[4]

Although the duty to pay for loss may carry with it an implicit duty to inspect to determine the amount of loss, the policy does not similarly imply a duty to actually repair the vehicle. Allstate's obligation is to "pay for direct and

---

[4] Cases considering disability and medical insurance claims have also held that in some situations, an insurer bears a duty to investigate once a claim has been filed. Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 721 (2007), Egan v. Mutual of Omaha Ins. Co., 24 Cal. 3d 809, 819 (1979), Paulfrey v. Blue Chip Stamps, 150 Cal. App. 3d 187, 195 (1983). The process for filing of medical and automobile insurance claims differs, and at this point, the court does not determine the effect of these cases on the current dispute.

accidental loss." Policy, 18. The amount of loss may be "the cost to repair or replace the property or part" to its pre-loss condition. Policy Endorsement at 11. This language creates an obligation to pay, not an obligation to actually perform the repair. Elsewhere, the policy states that "Allstate may pay for the loss in money, or may repair or replace the damaged or stolen property at our option." Policy, 21. Allstate therefore has the option of repairing the damaged vehicle, but no obligation to do so.

### b. Appraisal As Predicate to Suit

The policy provides that the insured may not proceed with an action against Allstate unless he has complied with all terms of the policy. Policy Endorsement, 8. Allstate argues that "[b]ecause plaintiff has not complied with all terms of the policy by refusing to proceed with the appraisal process, his complaint should be dismissed."

Each party has a "right to demand an appraisal of the loss." Policy, 21. Allstate made no such demand until two months after plaintiff filed this suit. No language in the policy indicates that, prior to filing suit, plaintiff was obliged to affirmatively inquire whether Allstate wished to seek an appraisal. Accordingly, at the time the suit was filed, plaintiff had complied with the terms of the policy.

Allstate's argument that appraisal is a type of arbitration, such that the suit should be stayed or dismissed pending that form of appraisal, is discussed below. However, plaintiff's failure to

submit to appraisal prior to filing suit did not violate the terms of the contract. As such, defendants' argument for dismissal based on non-compliance with the policy fails.

**2.   Bad Faith and Breach of The Implied Covenant of Good Faith and Fair Dealing**

Allstate argues that both the claim for bad faith and the claim for breach of the implied covenant of good faith and fair dealing should be dismissed because each requires an underlying breach of contract, and that no such breach is properly alleged here. Because the court denies defendants' motion to dismiss the breach of contract claim, this argument fails, and the court need not address whether it validly states the law.

**3.   Fraud and Misrepresentation**

Plaintiff's fourth claim is for fraud and misrepresentation, alleging that Allstate fraudulently represented that it would pay to return insured vehicles to the pre-accident safe condition. FAC ¶¶ 93-97.

Fed. R. Civ. P. 9(b) requires that a claim for fraud or misrepresentation allege with particularity "the circumstances constituting fraud or mistake." This rule "requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991). Allstate does not challenge the FAC's satisfaction of these requirements.

In addition, the Ninth Circuit has held that Rule 9(b) also

requires that a complaint "set forth an explanation as to why the statement or omission complained of was false and misleading." In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), superseded by statute on other grounds as stated in In re Silicon Graphics, Inc., 970 F. Supp. 746, 754 (N.D. Cal. 1997). Plaintiff has identified what was allegedly false. He alleges that Allstate represented that it intended to pay for all losses when in fact it had no such intent. Under California law, "a promise made without intention to perform can be actionable fraud." Smith v. Allstate Ins. Co., 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) (citing Locke v. Warner Bros., Inc., 57 Cal. App. 4th 354, 367 (1997)).

Defendants argue that notwithstanding the above, plaintiff must further allege facts that, if true, support the inference that the defendant lacked this intent. In similar cases, two sister district courts have imposed such a requirement, citing GlenFed. Smith, 160 F. Supp. 2d. at 1153; Icasiano v. Allstate Ins. Co., 103 F. Supp. 2d 1187, 1191-92 (N.D. Cal. 2000). In light of Fed. R. Civ. P. 9(b)'s provision that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," this court must decline to extend GlenFed in this way.

GlenFed concerned a securities fraud class action, in which plaintiffs alleged that defendant GlenFed portrayed itself "as able to withstand the recession and systemic problems in the thrift industry when in fact, GlenFed was just another problem-plagued thrift riddled by systemic defects." GlenFed, 42 F.3d at 1544-45

17

(internal quotation omitted).[5]  The en banc panel reached two major holdings.  First, in a claim for fraud, plaintiffs are not required to allege facts giving rise to an inference of scienter.  Id. at 1546.  Second, pursuant to the Rule 9 obligation to allege the circumstances "constituting" fraud, the complaint must do more than merely identify the challenged representations; it must also explain "what is false or misleading about a statement, and why it is false."  Id. at 1548.

In elaborating this second holding, the Ninth Circuit held that allegations supporting an inference of falseness may sometimes be required.  In securities fraud cases, the challenged representations are often predictions which are defensible when made, but which are proven wrong by an subsequent external event such as "a shift in consumer demand" or internal event such as a company's "revaluation of assets."  Id. at 1548-49.  In light of these difficulties, the panel held that a plaintiff "must set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading *when made*."  Id. at 1549 (emphasis in original).  This may be done by pointing to "inconsistent contemporaneous statements or information (such as internal reports)" or "contemporaneous statements or conditions."  Id.  Such allegations "may have the incidental effect of causing plaintiff to allege circumstances from

---

[5] In the time between when these representations were made and the suit was brought, GlenFed's stock price allegedly plummeted from $21.375 to $4.624 per share.  Id. at 1545.

18

which scienter can be inferred," but an inference of scienter itself is not required. Id.

GlenFed's holding regarding allegations of contemporaneous indicators of falsehood concerned allegedly fraudulent representations about objective facts, or at least predictions about objective facts. Thus, the panel was able to draw a sharp distinction between the elements of scienter and falsity. Pursuant to this distinction and Rule 9(b)'s provision that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," the panel treated scienter and falsity very differently. In this case, where the alleged falsehood is a statement of intent, this distinction cannot be drawn. Rule 9(b)'s plain language regarding the pleading standard for intent therefore precludes extending GlenFed to this case. See also Flowers v. Carville, 310 F.3d 1118, 1131 (9th Cir. 2002) (in a defamation claim, the fact that plaintiff "averred the required state of mind generally, without alleging corroborating evidence, does not defeat her complaint.").

As noted above, two sister courts, in cases coincidentally also concerning claims against Allstate, have reached the opposite result. Icasiano, 103 F. Supp. 2d at 1191 ("Plaintiff must allege specific facts contemporaneous to her purchase of the policy which, if true, would establish Allstate then had no intent to perform."), Smith, 160 F. Supp. 2d at 1153 (Pleadings violated Rule 9(b) when they contained "no facts (besides the alleged breach of contract) suggesting that Allstate's representations [of intent] were false

at the time they were made."). These decisions were motivated in part by the concern that a contrary rule "would allow every breach of contract to support a claim of fraud so long as the plaintiff adds to his complaint a general allegation that the defendant never intended to keep her promise." Smith, 160 F. Supp. 2d at 1154 (internal quotation and modification omitted); see also Bower v. Jones, 879 F.2d 1004, 1012 (7th Cir. 1994). This policy concern, while reasonable, cannot justify departure from the requirements of Rule 9(b). As the Ninth Circuit observed in GlenFed, "[w]e are not permitted to add new requirements to Rule 9(b) simply because we like the effects of doing so." 42 F.3d at 1546. Thus, just as plaintiffs are not required to allege facts supporting an inference of scienter, id., the allegations need not support an inference of intent.

A second reason for distinguishing GlenFed is that so far as this court is aware, the Ninth Circuit has not required allegations as to what was false about a representation outside the securities fraud context. When non-securities cases have cited GlenFed, they have turned on whether the complaint satisfied the ordinary "who, what, when, where and how" notice requirements. Mostowfi v. i2 Telecom Intern., Inc., 269 Fed. Appx. 621, 624 (9th Cir. 2008) (RICO fraud claim). District courts are split as to whether GlenFed is limited to securities cases. See, e.g., St. James v. Equilon Enterprises, LLC, 2008 WL 4279415 (S.D. Cal. Sept. 15, 2008), Smith, 160 F. Supp. 2d at 1152, Icasiano, 103 F. Supp. 2d at 1191-92 (GlenFed applies to all fraud claims); but see Marks v.

<u>Chicoine</u>, 2007 WL 160992 (N.D.Cal. Jan 18, 2007) <u>Rejects Skate</u>
<u>Magazine, Inc. v. Acutrack, Inc.</u>, 2006 WL 2458759, *3 n.2 (N.D.
Cal. Aug 22, 2006)(<u>GlenFed</u> limited to securities claims).

In any event, plaintiff alleges that Allstate had an
established and uniform policy of refusing to pay for repairs to
seatbelts. This policy, if proven, would support an inference that
Allstate did not intend to perform the contract.

**4. Unfair Competition**

California's Unfair Competition Law, ("UCL"), Cal. Bus. &
Prof. Code § 17200, proscribes "unlawful, unfair, or fraudulent
business acts." Plaintiff's fifth claim alleges that Allstate has
engaged in acts of each type. In opposing the present motion,
plaintiff has abandoned the allegations of unlawful acts; moreover,
these allegations did not sufficiently state a UCL claim.
Plaintiff has, however, successfully alleged unfair and fraudulent
business acts.

**a. Unlawful Acts**

To state a UCL claim predicated on an "unlawful" act, a
plaintiff must allege a violation of another law or statute. The
FAC alleges that Allstate performed "unlawful" acts within the
meaning of the UCL by violating California Insurance Code §§
1874.85-1874.87 and 11580 <u>et seq.</u>. These sections concern,
respectively, an obligation to inspect a statistically significant
number of repairs so as to detect fraud; provision of annual
reports detailing these inspections; providing insureds with a bill
of rights; and various "actions on policies containing liability

21

provisions." Plaintiff has not alleged facts constituting a violation of any of these sections, and plaintiff's opposition does not dispute this defect. Plaintiff's UCL claim is therefore dismissed insofar as it is based on a violation of these provisions of the insurance code.

### b. Unfair Acts

California courts have not adopted a uniform standard of what constitutes "unfair" conduct in the context of a UCL claim brought by a consumer. Puentes v. Wells Fargo Home Mortgage, Inc., 160 Cal. App. 4th 638, 646-47 (2008) (surveying approaches without choosing among them), Bardin v. DaimlerChrysler Corp., 136 Cal. App. 4th. 1255, 1267 (2006) (citing Cel-Tech, 20 Cal. 4th at 187 n.12) (identifying two predominant lines of cases), id. at 1274 (urging the legislature or the Supreme Court to clarify the meaning of "unfair"). Here, the parties have not addressed which definition should be applied to this case. In light of this uncertainty, the fact that plaintiff's allegations satisfy at least one of the definitions used by California courts compels denial of Allstate's motion to dismiss this claim.

One of the interpretations of "unfair" practices identified in Bardin arose under Smith v. State Farm Mut. Auto. Ins. Co., 93 Cal. App. 4th 700, 704 (2001). Under Smith,

> an "unfair" business practice occurs when that practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. The test of whether a business practice is unfair involves an examination of that practice's impact on its

1                 alleged victim, balanced against the reasons,
2                 justifications and motives of the alleged
               wrongdoer.

3   Bardin, 136 Cal. App. 4th at 1268-69 (summarizing Smith) (internal

4   quotations and modification omitted).

5       Application of this or other definitions of unfairness is "a

6   question of fact, which involves an equitable weighing of

7   circumstances." Aegis Sec. Ins. Co., 92 Cal. App. 4th at 894-95.

8   Nonetheless, California courts have sustained dismissals of some

9   claims of unfair conduct. For example, Bardin held that as a

10  matter of law, use of tubular steel in manufacturing automobile

11  exhaust manifolds, instead of the alleged industry standard of cast

12  iron, was not unfair. 136 Cal. App. 4th at 1270. This act did not

13  violate any public policy, and was not immoral, etc. Id.

14      The FAC alleges that defendants "unreasonably exerted their

15  considerable influence to prevent third party auto-repair shops

16  from inspecting and repairing the seat belts in Plaintiff and Class

17  Members' post-collision Allstate-insured vehicles." FAC ¶ 102(C).[6]

18  Plaintiff does not merely claim that Allstate failed to follow

19  industry standards, and alleges that by interfering with

20  independent repair shops' judgment, Allstate placed consumers at

21  risk. This court cannot conclude that such conduct was fair as a

22  matter of law. Plaintiff's allegation of "unfair" conduct survives

23  a motion to dismiss.

24  ////

25  _____

26      [6] Perhaps tellingly, Allstate's memoranda supporting the
motion to dismiss completely overlook this allegation.

### c.  Fraudulent Acts

Defendants also argue that plaintiff's allegations of fraud for purposes of the UCL, like the allegations in plaintiff's direct claim for fraud, fail to satisfy the requirements of Fed. R. Civ. P. 9(b).  For the reasons stated in section II(B)(3) above, plaintiff's allegations are sufficient.

### 5.  RICO

Plaintiff's sixth claim is for a violation of RICO, 18 U.S.C. §§ 1961-1964.  Plaintiff does not state which particular provision of RICO Allstate is alleged to have violated.

RICO imposes three theories of liability, each of which requires a "person" to interact with an "enterprise."  18 U.S.C. §§ 1962(a)-(c).  In interpreting section 1962(c), the Ninth Circuit has held that "RICO plaintiffs must allege a defendant--the 'person' or 'persons'--who is distinct from the enterprise whose business the defendant is conducting."  Wagh v. Metris Direct, Inc., 348 F.3d 1102, 1112 (9th Cir. 2003) (quoting Sever v. Alaska Pulp Corp., 978 F.2d 1529 (9th Cir. 1992)).  "[F]or the purposes of a single action, a corporate defendant cannot be both the RICO person and the RICO enterprise under section 1962(c)."  Sever, 978 F.2d at 1534.  Although plaintiff has not stated which subsection of RICO underlies his claim for liability, it appears that section 1962(c) is the only candidate, and that in any event, the holding in Sever applies beyond subsection (c).

RICO liability attaches to "persons." Because plaintiff seeks to impose RICO liability on "Allstate," "Allstate" must therefore

play the role of the "person." Plaintiff also alleges that "Allstate constitutes an 'enterprise' as that term is defined in 18 U.S.C. § 1961(4). Allstate is a corporation that is and continues to be engaged in activities that affect interstate commerce." FAC ¶ 113. Because plaintiff uses "Allstate" to refer to all three defendants, this allegation is imprecise. Nonetheless, plaintiff appears to allege that an individual corporation is itself the person and the enterprise.

Allstate's motion to dismiss is therefore granted with respect to this claim. Dismissal is without prejudice. If plaintiff seeks to amend to replead, he must specify what constitutes the "enterprise" for purposes of the RICO claim. See, e.g., Odom v. Microsoft Corp., 486 F.3d 541, 548-53 (9th Cir. 2007) (en banc).[7]

**7. Dismissal of Allstate Insurance Co. and Allstate Property and Casualty Insurance Co.**

Throughout this order, the court has adopted plaintiff's convention of using "Allstate" to refer to all three defendants. Separate from the arguments on the merits discussed above, defendants Allstate Insurance Co. and Allstate Property and Casualty Insurance Co. argue that they should be dismissed because they were not parties to plaintiff's insurance policy, and plaintiff has not alleged any theories of vicarious liability.

The court agrees that the FAC is devoid of allegations concerning corporate relationships or potential theories of

---

[7] Because the court grants dismissal of this ground, the court does not address defendants' other challenges to the RICO claim.

25

vicarious liability.  Nonetheless, plaintiff's allegations support direct liability for all three defendants.  Plaintiff alleges that each was a party to the policy, and the policy documents themselves name both Allstate Indemnity Co. and Allstate Insurance Co.  In light of this unexplained ambiguity, the court cannot reject plaintiff's allegation as to any of the three defendants. Moreover, plaintiff's UCL claim (for influencing auto-repair shops' willingness to inspect or replace seatbelts) may not depend on contractual privity.  As such, dismissal is not warranted for any defendant as to plaintiff's first through fifth claims.

### III. MOTION TO STRIKE

In addition to moving for dismissal, defendants move to strike the references to a failure to inspect from plaintiff's complaint. Fed. R. Civ. P. 12(f) authorizes the court to strike from any pleading "any redundant, immaterial, impertinent, or scandalous matter."  Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties. <u>See</u> 5A C. Wright & A. Miller, <u>Federal Practice and Procedure Civil 2d</u> § 1380 (2008);  <u>See also</u> <u>Hanna v. Lane</u>, 610 F. Supp. 32, 34 (N.D. Ill. 1985).

Here, as stated above, plaintiff's allegations regarding inspection may have merit.  As such, they are neither impertinent nor immaterial.  The motion to strike is therefore denied.

### IV. MOTION FOR STAY

Defendants separately argue that the policy's appraisal

26

provision is an arbitration agreement, and that the court should dismiss or stay the case pending arbitration. At the outset, the court agrees that appraisal is a form of arbitration. In general, the Federal Arbitration Act ("FAA") governs questions of arbitration in federal courts. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). However, "because the FAA neither defines arbitration nor spells out whether the term arbitration includes appraisal, we look to state law" in answering this question. Portland GE v. United States Bank Trust N.A., 218 F.3d 1085, 1086 (9th Cir. 2000) (citing Wasyl, Inc. v. First Boston Corp., 813 F.2d 1579 (9th Cir. 1987)). Under California law, an appraisal provision is an arbitration agreement. Cal. Code Civ. P. § 1280(a); Michael v. Aetna Life & Cas. Ins. Co., 88 Cal. App. 4th 925, 934 (2001) (treating an appraisal provision in an insurance policy as an arbitration agreement). Once it is determined that a contractual provision is an arbitration agreement, the FAA governs. Portland GE, 218 F.3d at 1090.

Under the FAA:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . upon being satisfied that the issue involved . . . is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had . . .

9 U.S.C. § 3. Here, the policy provides that both parties "have a right to demand an appraisal of the loss." Policy, 21. Defendants have made such a demand. Defs.' Ex. B. However, the

fact that plaintiff brings this suit as a putative class action prevents the court from concluding that the issue is referable to arbitration at this point, nor as I also explain, is it clear that arbitration under the instant complaint would ever by appropriate.

The appraisal provision is, in the instant matter, incompatible with class-wide adjudication of plaintiff's claims. "[C]lass action and arbitration are [not] inherently incompatible." Discover Bank v. Superior Court, 36 Cal. 4th 148, 167 (2005). Nonetheless, the particular appraisal provision at issue here is not a general form of arbitration. Instead, the provision precisely defines an appraisal process, designating limited powers to the appraisers. On the current record, the court cannot determine whether these appraisers are capable of making a class-wide determination of the amount of the loss. Even if the appraisers can make a class wide determination of value, it is clear that unlike a general arbitrator, they cannot make the necessarily prior determination as to whether class-wide adjudication is called for. C.f. Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 452 (2003). Accordingly, if the appraisal provision compels plaintiff to proceed to appraisal at this point, when class-wide adjudication is not available under that appraisal, then the appraisal provision effectuates a waiver of plaintiff's right to class adjudication (either through a class action or through arbitration).

Contractual provisions waiving the right to class-wide adjudication are often unconscionable under California law, and

unconscionability provides a defense to enforcement under section 2 of the FAA. <u>Shroyer v. New Cingular Wireless Servs.</u>, 498 F.3d 976, 983 (9th Cir. 2007), <u>Discover Bank v. Superior Court</u>, 36 Cal. 4th 148, 162-63 (2005). The California courts have adopted a specific test to determine the unconscionability of such a waiver. <u>Shroyer</u>, 498 F.3d 983 (quoting California cases). The court must determine:

> (1) whether the agreement is a consumer contract of adhesion drafted by a party that has superior bargaining power; (2) whether the agreement occurs in a setting in which disputes between the contracting parties predictably involve small amounts of damages; and (3) whether it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money.

<u>Id.</u> (internal quotations omitted). Here, the first element is satisfied, because the plaintiff consumer (the weaker party) was presented with the appraisal provision and "told to 'take it or leave it' without the opportunity for meaningful negotiation." <u>Szetela v. Discover Bank</u>, 97 Cal. App. 4th 1094, 1100 (2002). The disputes between parties to an automobile insurance predictably involve amounts of damages that, while, not trivial, may be too small to warrant individual litigation of particular losses, thereby satisfying this factor. <u>Cohen v. DIRECTV, Inc.</u>, 142 Cal. App. 4th 1442, 1452 (2006). Lastly, plaintiff has alleged a scheme of fraud and breach of contract as to a large number of defendants' customers.

In this case, the appropriateness of class certification has

not been determined.  Plaintiff may have a right to resolve this issue on a class basis, and referring the matter to appraisal now would be incompatible with that right.  To the extent that the waiver provision compels appraisal at this point in the process, the provision is unconscionable, and thereby unenforceable.  It may also be that class-wide questions can never be resolved through the appraisal process here.  Therefore, until the court determines whether class certification is appropriate (and, if a class is certified, that the appraisers may make a class-wide determination), the court cannot be "satisfied that the issue involved . . . is referable to arbitration under [the parties'] agreement."  9 U.S.C. § 3.  Accordingly, under the FAA, a stay of this action pending appraisal is unwarranted.

A second factor also suggests the stay is inappropriate.  The appraisal process rests on the possibility that a difference as to cost of repair is at the heart of the dispute.  Plaintiff's allegations, however, make no such claim.  Rather, plaintiff alleges that defendant has a policy of never assessing whether repair of the seatbelts is appropriate, and pressuring repair shops so that they do not estimate the cost of replacement.  It seems clear that both these allegations are outside the appraisal provisions, and therefore, would appear to render that provision irrelevant to plaintiff's lawsuit.

In light of this resolution of the motion to stay, the court does not address plaintiff's waiver, estoppel, and mootness arguments.

**V. CONCLUSION**

For the reasons stated above:

    1.   Defendants' motion to strike is DENIED.

    2.   Defendants' motion to dismiss is GRANTED as to plaintiff's sixth (RICO) claim, and as to plaintiff's fifth (UCL) claim insofar as it alleges an unlawful practice. Defendants' motion to dismiss is DENIED as to the first through fourth claims, and as to the remaining portions of plaintiff's fifth claim.

    3.   Defendants' motion to stay pending appraisal is DENIED. Plaintiff is granted 20 days to file an amended complaint.

    IT IS SO ORDERED.

    DATED: March 31, 2009.


                     LAWRENCE K. KARLTON
                     SENIOR JUDGE
                     UNITED STATES DISTRICT COURT