1

2

3

4

5

6

7                       UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   ROBERT WATTS, on behalf
     of himself individually and
11   all others similarly situated,

12                                    NO. CIV. S-08-1877 LKK/GGH
              Plaintiff,
13
         v.
14                                         O R D E R
     ALLSTATE INDEMNITY CO.,
15   an Illinois corporation, et al.,

16            Defendants.

17   _____/

18       Defendants in this action are Allstate Indemnity Company,

19   Allstate Insurance Company, and Allstate Property and Casualty

20   Insurance Company.   Plaintiff Robert Watts allegedly had an

21   automobile insurance policy with one or more defendants.   His car

22   was involved in an accident, after which he sought replacement of

23   the seatbelts and associated mechanisms.   Defendants allegedly

24   refused to pay for these costs or to engage in related actions.

25   Plaintiff then filed this putative class action alleging six

26   claims.   By a prior order, this court granted defendants' motion

                                   1

1 to dismiss plaintiff's claim under Racketeer Influenced and Corrupt

2 Organizations Act ("RICO") and denied defendant's motion as to all

3 other claims.   Plaintiff's RICO claim was dismissed without

4 prejudice, and plaintiff has filed a Second Amended Complaint re-

5 pleading this claim.   Defendants then filed a motion to dismiss

6 this amended claim.   For the reasons stated below, this motion is

7 granted, and plaintiff's RICO claim is again dismissed without

8 prejudice.

9                              **I.  BACKGROUND**

10 **A.   Factual Background**[1]

11       Plaintiff's factual allegations in his Second Amended

12 Complaint ("SAC") are substantially similar to those in his First

13 Amended Complaint ("FAC"), except for the allegations specific to

14 plaintiff's RICO claim.   These allegations are discussed in greater

15 detail in this court's order of March 31, 2009, Doc. No. 66, 2009

16 U.S.  Dist.  LEXIS 26618.   An  abbreviated  version  of  these

17 allegations is provided here.

18       The SAC, like the FAC, names three defendants: Allstate

19 Indemnity Company, Allstate Insurance Company, and Allstate

20 Property and Casualty Insurance Company.   Also like the FAC, the

21 SAC uses the name "Allstate" to refer to all three defendants

22 collectively, and thereby brings most allegations against all three

23 defendants, and does not specify which role was played by which

24

25       [1] The following facts are taken from the allegations of
plaintiff's second amended complaint, and are treated as true for
26 purposes of this motion only.

2

1  defendant.

2      Pursuant to this practice, plaintiff alleges that he purchased

3  and/or renewed an auto policy from "Allstate" in late 2005.  SAC

4  ¶ 39.  At that time and now, Allstate's standardized materials

5  assured  policyholders  that  "accidents  happen,"  but  that

6  policyholders would "continue to feel the safety Allstate provided

7  from the beginning."  Id. ¶ 29.  Allstate's slogan was and is

8  "You're in good hands with Allstate."  Part VII of the auto policy

9  received by plaintiff provides that "Allstate will pay for direct

10  and accidental loss to your insured auto . . from a collision with

11  another object or by upset of that auto . . . ." Defs.' Ex. A,

12  Policy, 18.

13      On March 29, 2006, plaintiff's insured vehicle was involved

14  in a collision.  SAC ¶ 42.  This impact damaged the seatbelts and

15  associated mechanisms.  Id. ¶¶ 16, 42.  Defendants nonetheless

16  refused to provide insurance coverage to replace the seatbelts.

17  ¶ 53.

18      Allstate's refusal to pay for seatbelt replacement was the

19  result of "a uniform policy of refusing to pay for seat belt

20  replacement and inspection in any Allstate-insured vehicle involved

21  in an automobile accident."  Id. ¶ 22.  Allstate acted to conceal

22  this policy.  Id.  "Allstate . . . trained its employees to avoid

23  writing the inspection or repair of seat belts into estimates for

24  repair of vehicles involved in a collision."  Id. ¶ 23.  This

25  policy was adopted pursuant to a recommendation by a consulting

26  group, McKinsey, which led to:

3

1  universal,   company-wide   policies   and
   procedures in place at ALLSTATE to arrive at
2  powerful, cost-saving tools to systematically
   deny, reduce, or minimize the amount of money
3  paid on personal injury and property damage
   claims including the corporate-wide policy to
4  deny the inspection and replacement of seat
   belts   in   postcollision   ALLSTATE-insured
5  vehicles.

6  Id. ¶ 38.

7  **B.   Procedural History**

8      Plaintiff's RICO claim is alleged under 18 U.S.C. § 1962(c).[2]

9  This section provides that:

10     It shall be unlawful for any person employed
       by or associated with any enterprise engaged
11     in,   or   the   activities   of   which   affect,
       interstate or foreign commerce, to conduct or
12     participate,   directly   or   indirectly,   in   the
       conduct of such enterprise's affairs through
13     a   pattern   of   racketeering   activity   or
       collection of unlawful debt.

14

15  18 U.S.C. § 1962(c).   In granting defendants' motion to dismiss

16  plaintiff's RICO claim as alleged in the FAC, this court explained

17  that plaintiff had alleged that "Allstate" was both the "person"

18  and the "enterprise" for purposes of section 1962(c), but that the

19  statute required two separate entities. Order of April 20, 2009 at

20  24-25.   In the SAC, plaintiff alleges that defendant Allstate

21  Indemnity Company is the "person," and that defendant Allstate

22  Insurance Company is the "enterprise."   SAC ¶¶ 114, 115.   The

23  former is a subsidiary of the latter.   Id. at ¶ 116.   Plaintiff

24

25      [2] Although the SAC merely refers to section 1962, plaintiff's
    opposition memorandum clarifies that plaintiff's claim arises only
26  under section 1962(c).

4

1   attributes the policy of declining to inspect and replace seatbelts

2   to Allstate Indemnity Company (the alleged "person"),  alleging

3   that this policy constitutes fraud, and increases profits for both

4   Allstate Indemnity Co. and Allstate Insurance Co.  Id. ¶¶ 117, 118.

5   This fraudulent policy was created and implemented in Illinois, and

6   "is passed along state lines through every ALLSTATE office in the

7   United States and every ALLSTATE- owned auto repair shop."  Id. ¶¶

8   119, 120.  Plaintiff's RICO claim further alleges that "Allstate"

9   engages in fraud every time it informs prospective policyholders

10  that it will return their vehicle to safe, pre-accident conditions.

11  Id. ¶ 121.   Lastly, plaintiff alleges that "ALLSTATE uses its

12  considerable leverage to prevent third party autorepair shops

13  across the country from inspecting or repairing the seat belts in

14  ALLSTATE-insured post-collision vehicles."  Id. ¶ 122.

15     **II. STANDARD FOR A FED. R. CIV. P. 12(B)(6) MOTION TO DISMISS**

16      In order to survive a motion to dismiss for failure to state

17  a claim, plaintiffs must allege "enough facts to state a claim to

18  relief that is plausible on its face."  Bell Atlantic Corp. v.

19  Twombly, 550 U.S. 544, 569 (2007).  While a complaint need not

20  plead "detailed factual allegations," the factual allegations it

21  does include "must be enough to raise a right to relief above the

22  speculative level."  Id. at 555.

23      The Supreme Court recently held that Federal Rule of Civil

24  Procedure 8(a)(2) requires a "showing" that the plaintiff is

25  entitled to relief, "rather than a blanket assertion" of

26  entitlement to relief.  Id. at 555 n.3.  Though such assertions may

1  provide a defendant with the requisite "fair notice" of the nature

2  of a plaintiff's claim, the Court opined that only factual

3  allegations can clarify the "grounds" on which that claim rests.

4  Id.  "The pleading must contain something more. . . than . . . a

5  statement of facts that merely creates a suspicion [of] a legally

6  cognizable right of action."  Id. at 555, quoting 5 C. Wright & A.

7  Miller, Federal Practice and Procedure, § 1216, pp. 235-36 (3d ed.

8  2004).[3]

9       On a motion to dismiss, the allegations of the complaint must

10 be accepted as true.  See Cruz v. Beto, 405 U.S. 319, 322 (1972).

11 The court is bound to give the plaintiff the benefit of every

12 reasonable inference to be drawn from the "well-pleaded"

13 allegations of the complaint.  See Retail Clerks Int'l Ass'n v.

14 Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  In general, the

15 Complaint is construed favorably to the pleader.  See Scheuer v.

16 Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by

17 Harlow v. Fitzgerald, 457 U.S. 800 (1982).  Nevertheless, the court

18 does not accept as true unreasonable inferences or conclusory legal

19 allegations cast in the form of factual allegations.  W. Mining

20 Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

**III. ANALYSIS**

22      Defendants provide five arguments for dismissal.  The first

23

24      [3] The holding in Twombly explicitly abrogates the well
established holding in Conley v. Gibson that, "a complaint should
not be dismissed for failure to state a claim unless it appears

25 beyond doubt that the plaintiff can prove no set of facts in
support of his claim which would entitle him to relief."  355 U.S.

26 41, 45-46 (1957); Twombly, 550 U.S. at 560.

6

1 of these arguments, failure to allege racketeering activity,

2 warrants dismissal.   However, this defect may be cured by

3 amendment.  The court therefore addresses the remaining arguments

4 as well.   Doing so is necessary for evaluation of defendants'

5 argument that these remaining grounds support dismissal with

6 prejudice, and also avoids the need for these arguments to be

7 raised in future motions.

8 **A.    Racketeering Activity, and A Pattern of Racketeering**

9     First, defendants argue that plaintiff has not alleged

10 "racketeering activity," which the statute defines with a list of

11 enumerated offenses.    18 U.S.C. § 1961(1), <u>H.J. Inc. v.</u>

12 <u>Northwestern Bell Telephone Co.</u>, 492 U.S. 292, 232 (1989).

13 Defendants relatedly argue that because there is no racketeering

14 activity, there is not an allegation of a "pattern" of racketeering

15 activity either.

16     Common law fraud is not racketeering activity. <u>See</u> <u>Giuliano</u>

17 <u>v. Fulton</u>, 399 F.3d 381, 388 (1st Cir. 2005).   However, mail fraud

18 and wire fraud are racketeering activity.   18 U.S.C. § 1961(1)(B)

19 (enumerating 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud)).

20 In opposing this motion, plaintiff argues that the SAC effectively

21 alleges mail and wire fraud, by alleging that defendant's policy

22 was both fraudulent and implemented across state lines.   In the

23 Ninth Circuit, the Fed. R. Civ. P. 9(b) pleading requirements apply

24 to the pleading of mail and wire fraud in RICO actions. <u>Lancaster</u>

25 <u>Community Hosp. v. Antelope Valley Hosp. Dist.</u>, 940 F.2d 397, 405

26 (9th Cir. 1991).    This requires a plaintiff to identify the

1 specific communications allegedly constituting mail and wire fraud.

2 Id. (citing Moore v. Kayport Package Express, Inc., 885 F.2d 531,

3 541 (9th Cir. 1989)).   The SAC does not identify any such

4 communications, and therefore fails to allege racketeering

5 activity.  By extension, the SAC also fails to allege a pattern of

6 racketeering activity.  Id. (a "pattern" for RICO purposes requires

7 at least two acts of racketeering activity).

8 **B.    No RICO Claim Is Alleged Against Allstate Insurance Co. and**

9 **Allstate Property and Casualty Co.**

10      RICO liability attaches to a "person . . . associated with any

11 enterprise."   18  U.S.C.  §  1962(c).   Plaintiff's complaint

12 explicitly alleges that the "person" in plaintiff's section 1962(c)

13 claim is "Allstate Indemnity Company."   Plaintiff alleges that

14 Allstate Insurance Company played the role of the enterprise--a

15 role to which RICO liability does not attach--and plaintiff makes

16 no allegations concerning the role played by Allstate Property and

17 Casualty Insurance Company.  Accordingly, plaintiff fails to state

18 a RICO claim against these two defendants.   However, it also

19 appears that plaintiff may cure this defect through amendment.  For

20 example, plaintiff may be able to properly allege that each

21 defendant was a person conducting the affairs of an association in

22 fact enterprise, composed of certain of the companies.

23      The court expresses no opinion as to whether possible future

24 allegations of this particular type are consistent with plaintiff's

25 understanding of the facts and whether they would support such a

26 claim; in particular, plaintiff would need to address how the

8

1   alleged person conducted the affairs of the alleged enterprise, as

2   discussed below.   The court merely cannot yet conclude that all

3   possible allegations various defendants as RICO "persons" would be

4   futile.

5   **C.     Distinctiveness between the "Person" and "Enterprise"**

6          Defendants  also  argue  that  a  parent  corporation  is  not

7   distinct from its subsidiary for purposes of a section 1962(c)

8   claim.    Section 1962(c) requires a person "associated with" an

9   enterprise.   18 U.S.C. § 1962(c).   Courts have held that because

10  an entity cannot associate with itself, this language imposes a

11  "distinctness" requirement, such that the person must be distinct

12  from the enterprise.  See Cedric Kushner Promotions, Ltd. v. King,

13  533 U.S. 158, 160 (2001), Wilcox v. First Interstate Bank, N.A.,

14  815  F.2d  522,  529  (9th  Cir.  1987).     In  other  words,  the

15  "'enterprise' [can] not simply [be] the same 'person' referred to

16  by a different name."   King, 533 U.S. at 160.   See also River City

17  Markets, Inc. v. Fleming Foods West, Inc., 960 F.2d 1458, 1461 (9th

18  Cir. 1992) ("The person / enterprise distinction arises from the

19  long-standing common law maxim that a person cannot conspire with

20  himself.").

21         Unpopular statutes often develop unusual jurisprudence.  Thus,

22  in decisions of several other circuits, corporate subsidiaries were

23  found not to be distinct from their corporate parents.  See Bucklew

24  v. Hawkins, Ash, Baptie & Co., LLP, 329 F.3d 923, 934 (7th Cir.

25  2003), Bessette v. Avco Financial Services, Inc., 230 F.3d 439, 449

26  (1st Cir. 2000), Fogie v. THORN Americas, Inc., 190 F.3d 889, 898

9

1  (8th Cir. 1999), <u>Brannon v. Boatmen's First Nat'l Bank</u>, 153 F.3d

2  1144, 1147 (10th Cir. 1998) <u>Lorenz v. CSX Corp.</u>, 1 F.3d 1406, 1412

3  (3d Cir. 1993).   As recently explained by Judge Sabraw in the

4  Southern District of California:

5              These courts recognize that the parent and its
             subsidiary  are   separate   legal   entities.
6              However,  they   also   acknowledge   that  "a
             subsidiary that simply conducts its affairs as
7              delegated by the parent company for the profit
             of  the parent company is engaged in nothing
8              more than a legitimate corporate and financial
             relationship, which  is  certainly  not  subject
9              to  RICO  liability  on  that  basis  alone."
             <u>Bessette</u>, 230 F.3d at 449 (citations omitted).
10             Accordingly,  these  courts  require  "something
             more"   to   satisfy   the   distinctiveness
11             requirement.

12  <u>Leyvas v. Bank of Am. Corp. (In re Countrywide Fin. Corp. Mortg.</u>

13  <u>Mktg. & Sales Practices Litig.)</u>, 601 F. Supp. 2d 1201, 1214 (S.D.

14  Cal. 2009) (citing cases from the First, Third, Seventh, and Eighth

15  Circuits).

16       Neither the Ninth Circuit nor the Supreme Court have directly

17  addressed this issue.  <u>C.f.</u> <u>Wilcox v. First Interstate Bank, N.A.</u>,

18  815 F.2d 522, 529-30 (9th Cir. 1987) (declining to rule on whether

19  a parent corporation could be the enterprise in a section 1962(c)

20  claim against a subsidiary).  However, both have considered closely

21  related cases.  In <u>United States v. Benny</u>, 786 F.2d 1410 (9th Cir.

22  1986),  the  Ninth  Circuit  held  that  the  owner  of  a  sole

23  proprietorship was distinct from the proprietorship for purposes

24  of 18 U.S.C. section 1962(c).  <u>Id.</u> at 1415.  The court stated in

25  dicta that the sole stockholder of a corporation was distinct from

26  the  corporation,  because  the  corporation's  separate  existence

1  provides "some legal protections," and because all that is required

2  for distinctness "'is that the [enterprise] be either formally (as

3  when there is corporation) or practically (as when there are other

4  people beside the proprietor working in the organization) separable

5  from the individual.'"  Id. at 1416 (quoting McCullough v. Suter,

6  757 F.2d 142, 144 (7th Cir. 1985), modification in original);

7  accord Emery v. American Gen. Fin., 134 F.3d 1321, 1325 (7th Cir.

8  1998) ("there is no contradiction or even strain in talking about

9  the 'owner' of a 'corporation' as separate entities.").  The Ninth

10  Circuit quoted from Benny and repeated this dicta in Sever v.

11  Alaska Pulp Corp., 978 F.2d 1529, 1534 (9th Cir. 1992).  In Sever,

12  the Ninth Circuit again stated in dicta that a sole stockholder was

13  separate from a corporation, and held that officers of a

14  corporation were also distinct from the corporation itself,

15  notwithstanding "the inability of a corporation to operate except

16  through its officers."  Id.

17      The Supreme Court reached a similar result in King, holding

18  that section 1962(c) applies "when a corporate employee unlawfully

19  conducts the affairs of the corporation of which he is the sole

20  owner -- whether he conducts those affairs within the scope, or

21  beyond the scope, of corporate authority."  King, 533 U.S. at 166.

22  "The corporate owner/employee, a natural person, is distinct from

23  the corporation itself, a legally different entity with different

24  rights and responsibilities due to its different legal status. And

25  we can find nothing in the statute that requires more

26  'separateness' than that. Cf. McCullough v. Suter, 757 F.2d 142,

144 ([7th Cir.] 1985) (finding either formal or practical separateness sufficient to be distinct under § 1962(c))." Id. at 163.[4]

In Illinois v. Countrywide Fin Corp, plaintiffs argued to the Southern District of California that the Supreme Court's decision in King and the Ninth Circuit's decision in Sever supported the conclusion that a parent is per se distinct from its subsidiary. 60 F. Supp. 2d at 1214 n.3.   The district court rejected this argument on the ground that King and Sever did not directly consider this question. Id.  Instead, the court "[found] it more appropriate to consider the reasoning of those courts that have addressed this particular issue." Id.  The court therefore held that to satisfy the distinctiveness requirement, plaintiffs most allege "something more" than the fact that a parent and subsidiary are legally separate entities. Id. at 1214.  The court then held that this requirement was satisfied, because plaintiffs had alleged that the decision to act through a subsidiary removed a potential for checks and balances that would have inhibited the racketeering scheme, and that each individual had a distinctive role. Id. at 1214-15.

Plaintiff in this case has not attempted to allege "something

---

[4]   Thus, both the Supreme Court, in King, and the Ninth Circuit, in Sever, have favorably cited the Seventh Circuit's decision in McCullough, which found that either formal or practical separateness sufficed.  McCollough therefore carries some weight with this court notwithstanding the fact that the Seventh Circuit did not follow McCullough in concluding that a corporate parent is not ordinarily distinct from a corporate subsidiary. See, e.g., Bucklew, 329 F.3d at 934.

12

1  more" demonstrating distinctness.  Nonetheless, this court must

2  disagree with Countrywide Fin. Corp. and conclude that King and

3  Sever control this case, and that "something more" is not required.

4  King held that the only distinctiveness required was "a legally

5  different entity with different rights and responsibilities due to

6  its different legal status."  533 U.S. at 163.  Sever adopted a

7  similar test, and held that formal distinctiveness was itself

8  sufficient, regardless of whether there was also practical

9  separation.  978 F.2d at 1534 (quoting Benny, 786 F.2d at 1416).

10  A separately-incorporated subsidiary satisfies the tests

11  articulated by both King and Sever.

12       Two additional factors support this conclusion.  Both King and

13  Sever concluded that a sole shareholder was distinct from a

14  corporation.  King, 533 U.S. at 166; Sever, 978 F.2d at 1534.  A

15  corporate parent's relationship with a subsidiary is that of a

16  majority, if not sole, shareholder.  Therefore, King and Sever come

17  closer to addressing these facts than Countrywide Fin. Corp.

18  acknowledged.

19       Furthermore, although this court does not disregard the weight

20  of authority from other circuits lightly, the court takes some

21  reassurance from the Ninth Circuit's recent en banc opinion in Odom

22  v. Microsoft Corp., 486 F.3d 541 (9th Cir. 2007).  Odom reiterated

23  that courts "should not read the statutory terms of RICO narrowly."

24  Id. at 547.  While "[t]here has been some judicial resistance to

25  RICO, manifested in narrow readings of its provisions by lower

26  federal courts[,] [i]n four notable cases [one of which was King],

13

1 the Supreme Court has corrected these narrow readings." Id. at

2 545. From these cases, the Ninth Circuit took the observation that

3 "RICO is to be read broadly" and "be liberally construed to

4 effectuate its remedial purposes." Id. at 547 (quoting Sedima,

5 S.P.R.L. v. Imrex Co., 473 U.S. 479, 497-98 (1985)).

6      For these reasons, the court holds that a corporate parent is

7 distinct from its corporate subsidiary such that one may be

8 "associated with" the other for purposes of a claim under 18 U.S.C.

9 section 1962(c).

10 **D.    The Person's Conduct of the Enterprise's Affairs**

11      Lastly, to state a claim under section 1962(c), a plaintiff

12 must allege that the "defendant[] conducted or participated in the

13 conduct of the 'enterprise's affairs,' not just [its] own affairs."

14 Reves v. Ernst & Young, 507 U.S. 170, 185 (1993). A defendant must

15 participate in the "operation" or "management" of the enterprise,

16 such that the defendant has "some part in directing the

17 [enterprise's] affairs." Id. at 179, 185.

18      Here, plaintiff's complaint includes no allegations speaking

19 to this issue. Plaintiff's sole argument is that "whether a

20 particular defendant actually operates or manages an enterprise"

21 is ordinarily a jury question. Pl.'s Opp'n, 7. While the question

22 of whether certain conduct constitutes operation or management of

23 an enterprise may be a jury question, such conduct must first be

24 identified. C.f. United States v. Allen, 155 F.3d 35, 42-43 (2d

25 Cir. 1998) ("A reasonable fact-finder could find that payment of

26 the bribes either did or did not" constitute "participation in the

14

operation or management of the enterprise."). Accordingly, to state a RICO claim under section 1962(c), plaintiff must allege that the person "conduct[ed] or participate[d]" in the enterprise's affairs, § 1962(c), and this allegation must be more than "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555.

### IV. CONCLUSION

For the reasons stated above, defendants' motion to dismiss is GRANTED. Plaintiff's sixth claim for relief is hereby DISMISSED WITHOUT PREJUDICE. Plaintiff is granted 20 days to file an amended complaint.

IT IS SO ORDERED.

DATED:  June 30, 2009.


LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

15