1  WENDY C. YORK, SBN 166864
   JENNIFER B. EULER, SBN 232378
2  **YORK LAW CORPORATION**
   1111 Exposition Blvd., Bldg. 500
3  Sacramento, California 95815
   Telephone: (916) 643-2200
4  Facsimile:  (916) 643-4680

5
   KIMBERLY A. KRALOWEC, SBN 163158
6  ELIZABETH I. NEWMAN, SBN 257329
7  **THE KRALOWEC LAW GROUP**
   188 The Embarcadero, Suite 800
8  San Francisco, California 94105
   Telephone:  (415) 546-6800
9  Facsimile:   (415) 546-6801

10 Attorneys for Plaintiff and the Putative Class

11

12                    UNITED STATES DISTRICT COURT

13                    EASTERN DISTRICT OF CALIFORNIA

14                        SACRAMENTO DIVISION

15

16
   ROBERT WATTS, on behalf of himself          CASE NO.: S-08-1877 LKK/GGH
17 individually and all others similarly situated,
                                               **MEMORANDUM OF POINTS AND**
18          Plaintiffs,                         **AUTHORITIES IN SUPPORT OF**
                                               **PLAINTIFF'S MOTIONS: (1) FOR**
19      vs.                                     **RELIEF FROM AN ORDER AND**
                                               **FINAL JUDGMENT (FED. R. CIV. P.**
20                                             **60(b)); (2) FOR LEAVE TO FILE A**
   ALLSTATE INDEMNITY COMPANY, an             **CORRECTED STATEMENT OF**
21 Illinois corporation; ALLSTATE INSURANCE   **DISPUTED MATERIAL FACTS (FED.**
   COMPANY, an Illinois corporation;          **R. CIV. P. 56(e)); AND/OR (3) FOR**
22 ALLSTATE PROPERTY AND CASUALTY             **RECONSIDERATION (E.D. CAL.**
   INSURANCE COMPANY, an Illinois             **LOCAL RULE 230(j))**
23 corporation; and DOES 1 through 100,
   inclusive,
24                                             Date:     July 18, 2011
                                               Time:     10:00 a.m.
25          Defendants.                         Dept.:    Courtroom 4, 15th Floor
                                               Before:   Hon. Lawrence K. Karlton
26

27

28

―――――――――――――――――――――――――――――――――――――
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR
RELIEF FROM JUDGMENT UNDER FED. R. CIV. PRO. 60(b) AND OTHER RELIEF

# TABLE OF CONTENTS

Page(s)

I.     INTRODUCTION ................................................................................- 1 -

II.    LEGAL STANDARDS GOVERNING THESE MOTIONS ........................- 1 -

    A.    Motion for Relief from Order or Judgment Fed. R. Civ. P. 60(b) ......- 1 -

    B.    Motion for Leave to File a Corrected Statement of Disputed Material Facts Under Fed. R. Civ. P. 56(e)...............................................................- 2 -

    C.    Motion for Reconsideration Under Local Rule 230(j) ........................- 3 -

III.    THE COURT IS RESPECTFULLY ASKED TO GRANT PLAINTIFF RELIEF FROM JUDGMENT UNDER RULES 60(B)(1), 56(E) AND 239(J) DUE TO HIS COUNSEL'S EXCUSABLE NEGLECT AND BASED ON NEWLY-DISCOVERED EVIDENCE ................................................................- 3 -

    A.    This Motion Satisfies All Requirements for Relief Under Rule 60 ....- 4 -

        1.    The Granting of This Motion Will Not Cause Defendants to Suffer Prejudice.................................................................- 4 -

        2.    Plaintiff Filed His Motion for Relief Without Delay and If Plaintiff's Motion for Relief is Not Granted, Plaintiff's Entire Action Will Be Dismissed Without A Hearing on Its Merits ................- 5 -

        3.    Defendants Intentionally Attempted to Overwhelm Plaintiff's Counsel and Thwart Plaintiff's Efforts to Oppose Their Motion for Summary Judgment................................................................- 5 -

        4.    Plaintiff acted in Good Faith in Preparing His Opposition to Defendants' Motion for Summary Judgment...........................- 7 -

    B.    Absent Plaintiff's Counsel's Excusable Neglect, Plaintiff Would Have Established the Existence of Genuine Issues of Material Fact as to Whether Plaintiff's Seat Belts were Damaged.....................................- 8 -

    C.    Newly-Discovered Evidence Creates Genuine Issues of Material Fact as to Whether Allstate Breached Its Policy Obligations by Failing to Replace Plaintiff's Seat Belts Regardless of Proof of Actual Damage.........................- 11 -

    D.    Absent Plaintiff's Counsel's Excusable Neglect, Plaintiff Would Have Established the Existence of Genuine Issues of Material Fact to Support Plaintiff's Cause of Action for Fraud and Misrepresentation. ..........................- 12 -

IV.    CONCLUSION ...............................................................................- 16 -

- i -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR
RELIEF FROM JUDGMENT UNDER FED. R. CIV. PRO. 60(b) AND OTHER RELIEF

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Ameron Int'l Corp. v. Insurance Co. of State of Pennsylvania,*
    50 Cal.4th 1370, 1378 (2010) ........................................................................................ 11

*Ashford v. Steuart,*
    657 F.2d 1053, 1055 (9th Cir. 1981)................................................................................ 5

*Backlund v. Barnhart,*
    778 F.2d 1386, 1388 (9th Cir. 1985)................................................................................ 2

*Bateman v. U.S. Postal Serv.,*
    231 F.3d 1220, 1223 (9th Cir. 2000)................................................................................ 3

*Bestran Corp. v. Eagle Comtronics, Inc.,*
    720 F.2d 1019 (9th Cir. 1983)........................................................................................... 3

*Broncel v. H&R Transport, Ltd.,*
    2010 WL 3582492 (E.D. Cal. 2010) ............................................................................... 3

*Delay v. Gordon,*
    475 F.3d 1039, 1034 (9th Cir.2007).................................................................................. 2

*Lee v. Equifirst Corp.,*
    2011 WL 1584124, *5 (M.D. Tenn. 2011) ...................................................................... 2

*Lemoge v. United States,*
    587 F.3d 1188, 1192 (9th Cir. 2009)......................................................................... 3, 4, 5

*Lyons v. Baughman,*
    2007 WL 1378022, *3 (E.D. Cal. 2007) .......................................................................... 2

*Mahran v. Benderson Devel. Co., LLC.,*
    2011 WL 2038574, 1 (W.D. N.Y. 2011) ......................................................................... 2

*Mainguth v. Packard,*
    2006 WL 1410737, *3 (M.D. Pa. 2006) .......................................................................... 3

*Patapoff v. Vollstedt's, Inc.,*
    267 F.2d 863, 865 (9th Cir. 1959).................................................................................... 2

*Pena v. Seguros La Comercial, S.A.,*
    770 F.2d 811,814 (9th Cir. 1985).................................................................................... 2

*Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd.,*
    507 U.S. 380, 394 (1993)............................................................................................ 3, 4

*Taylor v. Knapp,*
    871 F.2d 803, 805 (9th Cir. 1989).................................................................................... 2

*TCI Group Life Ins. Plan v. Knoebber,*
    244 F.3d 691, 701 (9th Cir. 2001)..................................................................................... 4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR
RELIEF FROM JUDGMENT UNDER FED. R. CIV. PRO. 60(b) AND OTHER RELIEF

**Statutes and Rules**

California Eastern District Local Rule 230(j) ................................................................. 1, 2, 13, 16

Federal Rules 56(e) ........................................................................................................ 1, 2, 11, 13

Federal Rule 59(a)........................................................................................................... 11, 12

Federal Rule 59(e) .......................................................................................................... 11, 12, 16

Federal Rules 60(b)........................................................................................ 1, 2, 4, 5, 10, 13, 16

Federal Rules 60(c) ............................................................................................................... 5

- iii -

## I.    INTRODUCTION

On April 8, 2011, Defendants filed their Motion for Summary Judgment.  Declaration of Wendy C. York filed 6/9/11 (hereinafter "York Decl. filed 6/9/11" ¶ 19.)  Two weeks later, on April 25, 2011, Plaintiff filed his Opposition.  *Id.* ¶ 19.  On May 8, 2011, the motion was heard by the Honorable Judge Karlton.  Judge Karlton took the matter under submission and on May 12, 2011, entered an Order granting in its entirety Defendant Allstate Indemnity Company's motion for summary judgment of Plaintiff's case.  Order filed 05/12/11 (Doc. No. 255) (hereafter "Order").  On the same day, this Court entered judgment for Defendants.  Doc No. 256 (hereafter "Judgment").  In this Motion, Plaintiff seeks relief from the Judgment pursuant to Federal Rules 60(b)(1) and 56(e) based on Plaintiff's counsel's negligent omission of supporting facts and evidence as well as California Eastern District Local Rule 230(j).

Had it not been for Plaintiff's counsel's negligent/careless omission of relevant facts and evidence, Plaintiff's opposition to Defendants' Motion for Summary Judgment would have clearly established genuine issues of material fact exist.  Thus, Plaintiff seeks relief and the opportunity to submit a Supplemental Separate Statement of Disputed Facts that establishes, among other things, 1) that Plaintiff's seat belts were damaged; 2) that Defendants are obligated to adhere to the auto manufacturer's recommendations in the Honda owner's manuals regarding replacement of seat belts following a collision; and 3) that Defendants had a policy of failing to pay for inspection or repairs to seat belts.

## II.    LEGAL STANDARDS GOVERNING THESE MOTIONS

Public policy favors decision of all cases on the merits.  Rule 60(b), Rule 56(e), and California Eastern District Local Rule 230(j) are remedial measures designed to allow the Court to grant relief to a party who, through negligence or carelessness, omitted facts and evidence necessary for a full hearing and determination based on the merits of the case.  All of the prerequisites to granting relief under each Rule are satisfied here.

### A.    Motion for Relief from Order or Judgment Fed. R. Civ. P. 60(b)

Rule 60 of the Federal Rules of Civil Procedure provides a means of altering a judgment in limited circumstances. Rule 60(b) provides:

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR RELIEF FROM JUDGMENT UNDER FED. R. CIV. P. 60(b) AND OTHER RELIEF

> On motion and upon such terms as are just, the court may relieve a party or a
> party's legal representative from a final judgment, order, or proceeding for the
> following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2)
> newly discovered evidence which by due diligence could not have been discovered
> in time to move for a new trial under Rule 59(b)...; or (6) any other reason
> justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b).  A motion for reconsideration of summary judgment is appropriately brought

under Rule 60(b).  *Taylor v. Knapp*, 871 F.2d 803, 805 (9th Cir. 1989); *Backlund v. Barnhart*, 778

F.2d 1386, 1388 (9th Cir. 1985).

    "Rule 60 regulates the procedures by which a party may obtain relief from a final

judgment.... The rule attempts to strike a proper balance between the conflicting principles that

litigation must be brought to an end and that justice should be done." *Delay v. Gordon*, 475 F.3d

1039, 1044 (9th Cir. 2007) (citing 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,

*Federal Practice and Procedure* § 2851 (2d ed.1995)).  "Rule 60(b) is remedial in nature and

therefore must be liberally applied." *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th

Cir. 1985) (citing *Patapoff v. Vollstedt's, Inc.,* 267 F.2d 863, 865 (9th Cir. 1959)).  Relief under

Rule 60(b) is discretionary.  *Mahran v. Benderson Devel. Co., LLC.*  2011 WL 2038574, 1 (W.D.

N.Y. 2011).

    **B.**    **Motion for Leave to File a Corrected Statement of Disputed Material Facts
Under Fed. R. Civ. P. 56(e)**

    Federal Rule of Civil Procedure 56(e), as amended in December 2010, provides that "if a

party fails to properly address another party's assertion of fact," the court may "give an opportunity

to properly support or address the fact." Fed. R. Civ. P. 56(e)(1).  "The Advisory Committee's

notes to the 2010 amendments state, '[i]n many circumstances[,] this opportunity will be the court's

preferred first step." *Lee v. Equifirst Corp.*, 2011 WL 1584124, *5 (M.D. Tenn. 2011).

    The relief provided by Rule 56(e) supports the strong public policy favoring hearings on the

merits.  In this Court's own words, "[w]henever it is reasonably possible, cases should be decided

on the merits." *Lyons v. Baughman*, 2007 WL 1378022, *3 (E.D. Cal. 2007) (Karlton, J.) (quoting

*Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)); *see also* Fed. R. Civ. Pro.

1 (setting forth Court's duty to "construe[] and administer [its Rules] to secure the *just* ...

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR
RELIEF FROM JUDGMENT UNDER FED. R. CIV. P. 60(b) AND OTHER RELIEF

determination of every action and proceeding" (emphasis added)); *Mainguth v. Packard*, 2006 WL 1410737, *3 (M.D. Pa. 2006) (citing this principle in granting reconsideration).  By amending Rule 56(e), the Legislature provided this Court with authority to allow a party to remedy its omissions by providing the party the opportunity to properly support any assertion of fact.  It is precisely the relief Plaintiff seeks here.  Granting Plaintiff the opportunity to support his factual assertions and properly address the facts asserted by Defendants will result in his claims being heard on the merits, rather than being decided based on an incomplete representation of the facts.

### C.   Motion for Reconsideration Under Local Rule 230(j)

Additionally, Local Rule 230(j) provides a means for a court to reconsider and change a prior order.  Specifically, Local Rule 230(j) requires a party to show "what new or different facts or circumstances are clamed to exist which did not exist or were not shown upon prior motion, or what other grounds exist for the motion" as well as "why the facts or circumstances were not shown at the time of the prior motion."  *See Broncel v. H & R Transp., Ltd.,* 2010 WL 3582492 (E.D. Cal. 2010) (granting reconsideration under Rule 230(j) (previously numbered Rule 230(k)).

### III.   THE COURT IS RESPECTFULLY ASKED TO GRANT PLAINTIFF RELIEF FROM JUDGMENT UNDER RULES 60(B)(1), 56(E) AND 239(J) DUE TO HIS COUNSEL'S EXCUSABLE NEGLECT AND BASED ON NEWLY-DISCOVERED EVIDENCE

Excusable neglect includes negligence on the part of counsel as well as omissions caused by carelessness.  *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd.*, 507 U.S. 380, 394 (1993); *Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009); *Bateman v. U.S. Postal Serv.,* 231 F.3d 1220, 1223 (9th Cir. 2000).  "The determination of whether neglect is excusable 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'"  *Lemoge,* 587 F.3d at 1192 citing *Pioneer,* 507 U.S at 395.  "To determine when neglect is excusable, we conduct the equitable analysis specified in *Pioneer* by examining 'at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith'."  *Lemoge*, 587 F.3d at 1192 citing *Bateman,* 231 F.3d at 1223-24.

1        Here, Plaintiff's counsel was negligent and/or careless in the preparation of his opposition to

2   Defendants' Motion for Summary Judgment by failing to properly cite all evidence in support of his

3   Disputed Facts in his Separate Statement of Disputed Facts.  Though each of Plaintiff's disputed

4   facts contained citations to supporting evidence, on several occasions the cited evidence was not the

5   most direct evidence nor did it include all evidence supporting Plaintiff's disputed fact.

6   Additionally, Plaintiff's counsel's declaration failed to properly authenticate key pieces of evidence

7   relied upon by Plaintiff in his Opposition, oral argument, and Separate Statement. Finally,

8   Plaintiff's Separate Statement also cited Defendants' Responses to Special Interrogatories, Set One,

9   yet failed to attach said responses as an exhibit for the Court to review.

10        Plaintiff's counsel's omissions were a result of carelessness and/or negligence.  Plaintiff's

11   counsel mistakenly believed that despite Defendants' efforts to overwhelm Plaintiff and obstruct his

12   ability to file his opposition, Plaintiff's counsel would be able to take and defend six expert

13   depositions, prepare Plaintiff's Motion for Class Certification, and prepare Plaintiff's Opposition to

14   Defendants' Motion for Summary Judgment.

15        **A.**    **This Motion Satisfies All Requirements for Relief Under Rule 60.**

16        All of the requirements for relief under Rule 60 identified by the U.S. Supreme Court in

17   *Pioneer* and the Ninth Circuit in *Lemoge* have been satisfied in this case.

18            **1.**    **The Granting of this Motion Will Not Cause Defendants to Suffer**

19                **Prejudice.**

20        Prejudice requires greater harm than simply that relief would delay resolution of the case.

21   *Lemoge,* 587 F.3d at 1196 ("[M]erely being forced to litigate on the merits cannot be considered

22   prejudicial for purposes of lifting a default judgment.") (citing *TCI Group Life Ins. Plan v.*

23   *Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001)).  Defendants have already prepared their Motion for

24   Summary Judgment, have already prepared their reply, and have already taken and defended all

25   necessary depositions in the preparation of their moving papers.  Furthermore, as the Judgment was

26   dispositive of all of Plaintiff's claims, Defendants are not subject to any double recovery on the

27   behalf of Plaintiff.  Thus, Defendants cannot show that they will be prejudiced or suffer any

28   tangible harm should Plaintiff's Motion for Reconsideration be granted.

- 4 -

     **2.**       **Plaintiff Filed His Motion for Relief Without Delay and If Plaintiff's Motion for Relief is Not Granted, Plaintiff's Entire Action Will Be Dismissed Without A Hearing on Its Merits.**

The impact of the Judgment entered by the Court is all-encompassing.  The Order granted Defendants' Motion for Summary Judgment in whole and the following Judgment disposed of each of Plaintiff's claims and his case in its entirety.  The potential impact of granting Plaintiff's Motion for Relief from Judgment pales in comparison.  Should the Court grant Plaintiff's Motion for Reconsideration, Plaintiff would simply be allowed to have his claims heard on their merits.

As a result of the Judgment's detrimental consequences to Plaintiff, Plaintiff did not delay in filing the instant motion.  Federal Rule 60(c) requires a motion brought pursuant to Federal Rule 60(b) be brought "within a reasonable time" and in no event "no more than a year after the entry of the judgment or order or the date of the proceeding."  Fed. Rule Civ. Proc. 60(c).  "What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to the other parties."  *Lemoge,* 587 F.3d at 1196 (citing *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) (per curiam)).  Here, Plaintiff filed his Motion for Reconsideration within 28 days from the date of judgment.  Plaintiff did not delay in filing the motion and Defendants will suffer no prejudice.

     **3.**       **Defendants Intentionally Attempted to Overwhelm Plaintiff's Counsel and Thwart Plaintiff's Efforts to Oppose Their Motion for Summary Judgment.**

On July 27, 2010, this Court issued a scheduling order setting a deadline of April 30, 2011 for Plaintiff to file his class certification motion, and a February 15, 2012 deadline for hearing on all other law and motion matters, including summary judgment motions.  Order filed July 27, 2010, ¶¶ 4-6 (Dock. No. 143).  On April 4, 2011, Defendants, without first noticing any depositions, moved the Court, ex parte for an order compelling the deposition of Plaintiff's experts.  York Decl. filed 6/9/11 ¶ 4.[1]  During the hearing on April 7, 2011, Defendants made it

---

[1]     The facts in this section are also confirmed in the Declaration of Jennifer B. Euler, filed concurrently herewith ("Euler Decl. filed 6/9/11"), ¶¶ 2-5.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR RELIEF FROM JUDGMENT UNDER FED. R. CIV. P. 60(b) AND OTHER RELIEF

1  clear that they wanted to take the depositions of Plaintiff's experts prior to the April 30 deadline

2  for Plaintiff's class certification motion.  Unbeknownst to the Court and Plaintiff's counsel,

3  Defendants also planned to serve a Motion for Summary Judgment the following day.  Defendants

4  failed to disclose this important information to the Court or Plaintiff's counsel at any time before

5  or during the April 7th ex parte hearing.  *Id.* ¶ 8.  On or about 4:08 p.m. on Friday, April 8, 2011,

6  Defendants filed an extensive summary judgment motion.  *Id.* ¶ 9.  Plaintiff's counsel did not

7  actually become aware of Defendants' Motion for Summary Judgment until Monday, April 11,

8  2011 as York Law Corporation's attorneys and Office Manager were attending an off-site attorney

9  meeting without access to email.  *Id.*  ¶ 10.  The hearing on the Defendants' Motion for Summary

10  Judgment was scheduled unilaterally by Defendants for May 8, 2011, making Plaintiff's

11  Opposition due no later than April 25, 2011, merely four days before Plaintiff's deadline to file

12  his Motion for Class Certification and also in the middle of Magistrate Newman's order of April

13  7, 2011 requiring expert depositions to be completed by April 30, 2011.  *Id.* ¶ 11.   Given the

14  Court's scheduling order issued in July 2010, defendants were well aware that Plaintiff would be

15  fully occupied preparing his class certification motion during this timeframe.  *Id.* ¶ 12.

16        On Monday, April 11, 2011, in compliance with Magistrate Newman's order dated April

17  8th, Court Order (Dock. No. 200.), the parties participated in a conference call to schedule the

18  taking of experts' depositions.  During the April 11th call, Plaintiff provided Defendants with

19  available dates for Plaintiffs' experts prior to April 30, 2011.  York Decl. filed 6/9/11 ¶ 13.  The

20  depositions of Plaintiff's experts were then scheduled as follows:  (1) Ken Klein on April 26th in

21  Elgin, Illinois; James Mathis on April 27th in Sacramento, California; and (3) Sandy Browne on

22  April 28th in Valencia, California.  *Id.* ¶ 14.  To attend these depositions, Plaintiff's counsel was

23  forced to fly to Illinois a day in advance of the deposition due to time zone differences and flight

24  schedules.  *Id.*  Thus, on Monday, April 25th, Plaintiff's counsel lost a day due to traveling in

25  order to attend Mr. Klein's deposition on April 26, 2011.  *Id.*  Plaintiff's counsel then immediately

26  returned to Sacramento by April 27th for the expert deposition of Mr. Mathis, and then flew to

27  Valencia, California on April 28th for the expert deposition of Sandy Browne.  *Id.*

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR
RELIEF FROM JUDGMENT UNDER FED. R. CIV. P. 60(b) AND OTHER RELIEF

1       During the April 11, 2011 conference call regarding scheduling of expert depositions,

2   Defendants refused to provide dates for its three experts until after Plaintiff gave dates for his

3   experts.  York Decl. filed 6/9/11 ¶ 15.  Two of the defense expert depositions were scheduled

4   during the week of April 18th – the week in which Plaintiff's counsel were now forced to prepare

5   Plaintiff's opposition to Defendants' motion for summary judgment and his class certification

6   motion.  Plaintiff reluctantly agreed to two of the dates set forth by Defendants and only because

7   Defendants asserted those were the only dates the experts would be available.  *Id.*  As a result of

8   Defendants' strategic maneuvering, Plaintiff's counsel was forced to travel to Chicago on April

9   20th to be able to take the deposition of defense expert Anthony Passwater on the morning of April

10  21st, and then immediately fly to Phoenix on Friday, April 22nd for defense expert Daniel Davee's

11  deposition.  *Id.*  All five of the aforementioned depositions took place during the two-week time

12  frame in which Plaintiff's counsel had to prepare his opposition to Defendants' Motion for

13  Summary Judgment and the two weeks prior to Plaintiff's deadline to file his Motion for Class

14  Certification.

15      Defendants voluntarily elected to file an extensive summary judgment motion and

16  knowingly set the motion for hearing so Plaintiff's opposition would be *due four days before his*

17  *class certification motion was due* pursuant to the Court's July 2010 order.  It is clear that

18  Defendants' strategic timing was aimed at overwhelming Plaintiff's counsel in an attempt to

19  impair Plaintiff's ability to file his opposition to Defendants' Motion for Summary Judgment.

20      Despite the obstacles put in place by Defendants, Plaintiff's counsel diligently worked to

21  oppose Defendants' Motion for Summary Judgment.  In the end, however, Defendants'

22  gamesmanship prevailed and Plaintiff's counsel was left with insufficient time to properly oppose

23  Defendants' motion.

24          **4.**    **Plaintiff acted in Good Faith in Preparing His Opposition to Defendants'**

25                   **Motion for Summary Judgment.**

26      Plaintiff and Plaintiff's counsel diligently worked to prepare Plaintiff's Opposition to

27  Defendants' Motion for Summary Judgment.  However, as outlined above, Plaintiff's counsel was

28  unable to fully prepare and finalize his Opposition while also traveling around the country to take

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR
RELIEF FROM JUDGMENT UNDER FED. R. CIV. P. 60(b) AND OTHER RELIEF

1   or defend five separate depositions and prepare Plaintiff's Motion for Class Certification.

2   Plaintiff's omissions were the result of negligence and carelessness, not willfulness or deviousness.

3       **B.     Absent Plaintiff's Counsel's Excusable Neglect, Plaintiff Would Have
             Established the Existence of Genuine Issues of Material Fact as to Whether
4            Plaintiff's Seat Belts were Damaged.**

5       As the Court's Order explains, Plaintiff's insurance policy obligated Allstate to " pay for

6   direct and accidental *loss* to [Plaintiff's] insured auto ... from a collision with another object."

7   Order at 10:11-14 (quoting Policy 18, Pl.'s Ex. A, ECF No. 211-1 (emphasis in original)).  Allstate

8   reserved the option of "pay[ing] for the *loss* in money," or "repair[ing] or replac[ing] the *damaged*

9   property."  *Id.* at 10:13-15 (quoting Policy 21 (emphasis and alterations in original)).

10      To determine whether Allstate breached its obligations under the policy, the Court first

11  turned to the question of whether the record contained evidence that Plaintiff's seat belts were

12  damaged in the accident.  Order at 11-13.  The Court quoted extensively from the declaration of

13  Defendants' expert, Mr. Daniel Davee, who declared that Plaintiff's seat belts were not damaged.

14  *Id.* at 11:23-12:15.  Then, the Court addressed "two pieces of evidence" that "Plaintiff cites ... in an

15  attempt to rebut" Mr. Davee's declaration.  *Id.* at 12:16-17 (citing Pl.'s Response to Def.'s

16  Statement of Undisputed Facts ¶ 44).  The Court found two pieces of evidence—namely Geanina

17  Watts' testimony that her seat belt "got stuck ... was very loose and [would] not go back" and

18  expert James Mathis' testimony relying on the same—failed to establish a triable issue as to

19  whether the seat belts were damaged.  *Id.* at 12:16-13:18.

20      It appears that the Court considered only those two pieces of evidence because those were

21  the only ones cited in Plaintiff's Response to Defendant's Separate Statement of Undisputed

22  Material Facts (Dock. No. 220).  *See* Order at 12:16-17 (citing Plaintiff's Response at ¶ 44).

23  However, Plaintiff timely filed, and the record contained, additional evidence that the seat belts

24  were damaged.  Due to Plaintiff's counsel's excusable neglect, citations to that additional evidence

25  were inadvertently not included in Plaintiff's Response to Defendant's Separate Statement.

26      The record contained the Declaration of Sandy Browne in Opposition to Defendants'

27  Motion for Summary Judgment or Partial Summary Judgment, filed Apr. 24, 2011 (Dock. No. 232)

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR
RELIEF FROM JUDGMENT UNDER FED. R. CIV. P. 60(b) AND OTHER RELIEF

("Browne Decl."). Ms. Browne—an expert with over 44 years of experience in vehicle occupant safety and restraint systems (Browne Decl. ¶¶ 2-12)—testified that "**the seat belt systems [in Plaintiff's vehicle] were compromised and should have been replaced.**" *Id.* ¶ 30. Ms. Brown explained that during the collision, the seat belts in Plaintiff's vehicle locked and took on significant force. *Id.* ¶¶ 29, 30. The collision loaded the seat belts, stretching and elongating the seat belt webbing. *Id.* ¶ 30. Once loaded, seat belt webbing "does not return to its previous elasticity," and the functionality of the seat belt cannot be guaranteed for any future collision. *Id.* ¶¶ 22-30; Brown Depo., 70:7-13, 70:19-24. Ms. Brown's testimony establishes that Plaintiff's seat belts incurred damage as a result of the collision, or at a minimum, creates a triable issue of material fact on that question.

Ms. Brown also described the flaws in Mr. Davee's purported conclusions. Brown Decl. ¶¶ 31-45. At the very least, this demonstrates further genuine issues of material fact as to whether Plaintiff's seat belts were damaged. For example, Mr. Davee evaluated the seat belt webbing by measuring the length of the webbing and correlating it to an exemplar belt. *Id.* ¶ 41. However, Ms. Brown explains that measuring the webbing is useless unless one knows the length of the webbing before the collision, which Mr. Davee did not. *Id.* Without the pre-crash measurement of the exact belt—which varies based on manufacturing variability and normal usage—comparing the belt to an exemplar belt cannot reliably indicate whether the webbing did not stretch. *Id.* Similarly, Mr. Davee's assessment of the seat belt assemblies, retractors and anchors was inadequate to determine whether the seat belts were damaged. He admits that he inspected the seat belts after they were removed from the vehicle. As such, he could not inspect the area where the anchors were bolted into the car and could not check for signs of stress at the anchorage site. *Id.* ¶ 45. He failed to perform a dynamic check of the seat belts, which requires driving the vehicle with the seat belts installed, and failed to inspect the tensioners while they were connected to the vehicle's electronic control module. *Id.* Ms. Brown's testimony demonstrates that Mr. Davee failed to adequately inspect the seat belts, thus the bases for his opinions are fundamentally flawed.

Ms. Browne also viewed the testimony of Geanina Watts as further reliable evidence that the seat belts were damaged. Browne Decl., ¶ 30. The Court declined to rely on the testimony of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR
RELIEF FROM JUDGMENT UNDER FED. R. CIV. P. 60(b) AND OTHER RELIEF

1  plaintiff's expert Mr. Mathis on the same point because he "does not claim to have [the] technical

2  expertise" to evaluate seat belt damage.  Order at 13:14.  However, Ms. Browne does.

3      Ms. Browne also determined that in light of the manufacturer's recommendations contained

4  in the 2005 Honda Civic Owner's manual, which she reviewed, the seat belts should be deemed

5  damaged.  Browne Decl., ¶ 23 (citing Owners' Manual, Ex. J to Declaration of Wendy C. York in

6  Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment or Partial

7  Summary Judgment, filed Apr. 25, 2011 (Dock. No. 211) (hereafter "York 04/25/11 Decl.")).  That

8  manual states that "'if a seatbelt is worn during a crash, it must be replaced the dealer.  A belt that

9  has been worn during a crash may not provide the same level of protection in a subsequent crash.'"

10 *Id.* (quoting Owners' Manual).  The Honda Seatbelt Installation Instructions provided further

11 evidence in support of Ms. Browne's conclusion that the seat belts should be deemed damaged.  *Id.*

12 ¶ 24 (citing Installation Instrs., Ex. K to York 04/25/11 Decl.).  Ms. Browne also testified that the

13 Allstate's own training materials, which she reviewed, reference the Owner's Manual as a source to

14 refer to for guidance on seat belt replacement, supports the conclusion that the seat belts should be

15 deemed damaged.  *Id.* ¶ 25 (citing Ex. P to York 04/25/11 Decl.).  Finally, Ms. Browne testified

16 that I-CAR "teaches the collision repair industry to follow the manufacturer recommendations

17 regarding seatbelt replacement when handling collision repair claims."  *Id.* (citing Exs O and R to

18 04/25/11 Decl.).  Collectively all of these materials mean that the seat belts in Plaintiff's vehicle

19 should be "deemed damaged."  *Id.* ¶ 26.

20     The Court's order notes that the record contained "no declaration by Plaintiff that the

21 exhibits [filed in opposition to the motion] were produced by defendant in discovery" or otherwise

22 authenticated.  Order at 16, n.5.  That was due to counsel's excusable neglect.  Euler Decl. filed

23 6/9/11, ¶¶ 4-5.  The authentication errors have now been corrected.  *See id.* ¶¶ 7-10.  (providing

24 proper authentication for all exhibits filed with original summary judgment opposition).

25     Plaintiff respectfully asks the Court to grant relief under Rule 60(b) in the interest of justice

26 and fairness to Mr. Watts, whose counsel alone were responsible for the deficiencies in his

27 opposition papers.  Plaintiff respectfully asks the Court to reconsider its ruling in light of Ms.

28 Browne's testimony, as well as other evidence that was timely filed but not properly cited and/or

- 10 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR
RELIEF FROM JUDGMENT UNDER FED. R. CIV. P. 60(b) AND OTHER RELIEF

1  authenticated in Plaintiff's opposition papers, and to permit Plaintiff to file a Corrected Response

2  citing Ms. Browne's testimony and other relevant record evidence under Rule 56(e).  All of this

3  evidence creates a genuine dispute of material fact as to Plaintiff's claim for breach of contract

4  (first cause of action) and thus for Plaintiff's bad faith claims (second and third causes of action) as

5  well.

6       **C.**    **Newly-Discovered Evidence Creates Genuine Issues of Material Fact as to**

7          **Whether Allstate Breached Its Policy Obligations by Failing to Replace Plaintiff's Seat Belts Regardless of Proof of Actual Damage.**

8       In its Order, the Court next turned to the question of "whether the defendant breached its

9  obligations by failing to pay to have the seatbelts replaced even if they were undamaged."  Order at

10  13:21-22.  As the Court observed, Plaintiff argued that "Allstate was obligated to adhere to the

11  recommendations in the owner's manual when determining the cost of 'loss' to the automobile, and

12  that in this case, those recommendations required replacement of the seatbelts following an

13  accident."  *Id.* at 13:23-14:1.  The Court held that "such an obligation ***may be present***" *if* the

14  evidence showed that Allstate believed that policyholders would expect it to adhere to the owner's

15  manual's recommendations when restoring a vehicle to its pre-accident condition.  *Id.* at 14:13-24

16  (emphasis added) (citing *Ameron Int'l Corp. v. Insurance Co. of State of Pennsylvania*, 50 Cal.4th

17  1370, 1378 (2010)).  The Court found the evidence presented in opposition to the motion

18  insufficient to create a triable issue of material fact on this point.  *Id.* at 14:25-17:1.

19       As discussed in detail in the accompanying memorandum of points and authorities in

20  support of Plaintiff's motion for a new trial under Rule 59(a) and to alter or amend the judgment

21  under Rule 59(e), newly-discovered evidence in the form of the testimony of Defendants'

22  designated expert, Mr. Robert Lange, creates a triable issue of fact on this question.  As explained

23  in that memorandum (at pp. 5-10.), Mr. Lange testified that when the manufacturer's service

24  manual is silent on the subject of seat belt inspection or replacement following a collision, then the

25  collision repair industry should refer to the owner's manual to determine how to restore a vehicle to

26  its pre-accident condition.  York Decl. filed 6/9/11 ¶ 18 & Ex. H (Lange Depo. at 149:1-14, 211:19-

27  212:2).  The service manual for Plaintiff's Honda is silent with respect to seat belt inspection or

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR
RELIEF FROM JUDGMENT UNDER FED. R. CIV. P. 60(b) AND OTHER RELIEF

1  replacement in collisions in which the supplemental restraint systems are not activated. *Id.*; Lange

2  Depo. at 169:24-170:12. Accordingly, the Honda owner's manual should have been consulted. *Id.*;

3  Lange Depo. at 149:1-14, 211:19-212:2.

4      The Court is respectfully asked to grant relief under Rule 60(b)(2) based on this newly-

5  discovered evidence. Plaintiff incorporates by reference the arguments regarding Mr. Lange's

6  testimony set forth in the accompanying motion for relief under Rules 59(a) and 59(e) (at pp. 5-15).

7  As discussed in that motion (at pp. 10-13.) and in the accompanying declaration of Wendy York (¶

8  17), Mr. Lange's deposition testimony was not available when Plaintiff's opposition to the

9  summary judgment motion was due and was filed. As also discussed in that motion (at pp. 5-10),

10  Mr. Lange's testimony creates a triable issue of material fact sufficient to defeat summary judgment

11  of Plaintiff's first, second, third, and fifth causes of action.

12      **D.      Absent Plaintiff's Counsel's Excusable Neglect, Plaintiff Would Have
            Established the Existence of Genuine Issues of Material Fact to Support
13          Plaintiff's Cause of Action for Fraud and Misrepresentation.**

14      In analyzing Plaintiff's cause of action for fraud and misrepresentation, the Court reiterated

15  that proof that "'Allstate had an established and uniform policy of refusing to pay for repairs to seat

16  belts,' could support an inference that Allstate entered into contract with the intent of not

17  performing its obligations." Order at 20:11-14 (quoting March 31, 2009 Order 21, ECF No. 66).

18  "Therefore, the Court looks for evidence of an established and uniform policy of refusing to pay for

19  repairs to seatbelts." *Id.* at 20:14-16. The Court quoted the declaration of Allstate Claims Project

20  Manager Robert Howell, who testified that "Allstate has paid to replace seatbelts on hundreds or

21  thousands of first party auto claims in California during the past five years." *Id.* at 20:16-23.

22      In his written opposition, Plaintiff cited Defendants' Responses to Special Interrogatories

23  Number 2 and 3, where Defendants state that Allstate paid for inspection or replacement of seat

24  belts in fewer than 1% of the 135, 000 claims submitted in California each year. As the Court

25  observed in its Order, however, these interrogatory responses did "not appear in Plaintiff's Index of

26  Evidence in Support of Plaintiff's Opposition to Allstate's Motion for Summary Judgment." Order

27  at 21:1-5. Due to Plaintiff's counsel's excusable neglect, these interrogatory responses were

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR
RELIEF FROM JUDGMENT UNDER FED. R. CIV. P. 60(b) AND OTHER RELIEF

1  inadvertently not referenced in the Index of Evidence or attached to any declaration.  Euler Decl.

2  filed 6/9/11 ¶ 5.  To rectify the error, a copy of the missing interrogatories are filed herewith.  *Id.*

3  Ex. C.

4        Allstate's interrogatory responses directly refute Mr. Howell's testimony.  They state that

5  Allstate has paid for inspection or replacement of seat belts in fewer than 1% of the 135, 000 claims

6  submitted in California each year.  They create a genuine issue of material fact as to whether

7  Allstate has "an established and uniform policy of refusing to pay for repairs to seatbelts."  Order at

8  20:15-16.  Plaintiff respectfully requests that the Court grant relief under Rules 60(b), 56(e), and

9  230(j), and consider these interrogatory responses.

10        Additionally, Plaintiff's expert Sandy Browne testified that Mr. Howell's testimony was

11  insufficient to rebut the conclusion, drawn from other record evidence, that Allstate does not in fact

12  "pay for any physical damage sustained by the seatbelts in an insured vehicle as a result of a

13  covered collision," as Mr. Howell claims.  Browne Decl. ¶ 67.  Ms. Browne examined Allstate's

14  seat belt inspection methods in detail, and testified that they are *not* sufficient to determine whether

15  the seat belts have in fact been damaged and should be replaced.  *Id.* ¶¶ 46-52 L & Ex. B.  Ms.

16  Browne also testified that the cursory "inspection" Allstate performed of the seat belts in Plaintiff's

17  vehicle was woefully insufficient to detect actual damage.  *Id.* ¶¶ 53-66.  Accordingly, as Ms.

18  Browne explained, Mr. Howell's testimony indicates only that Allstate may have replaced some

19  seat belts with obvious physical damage.  *Id.* ¶ 67.  Because Allstate fails to employ adequate

20  inspection methods, Allstate's established and uniform policy is neither to adequately inspect for

21  damage, nor to repair most actually damaged seat belts.  *See id.*

22        As discussed above, Ms. Browne's declaration was timely filed, but due to excusable

23  neglect, it was inadvertently not cited in Plaintiff's Response to Defendant's Statement of

24  Undisputed Facts.  Again, Plaintiff respectfully asks the Court to grant relief under Rules 60(b),

25  56(e), and 230(j), so as not to punish Mr. Watts for his counsel's excusable neglect.

26        The Court then observed that "in his opposition to defendant's motion for summary

27  judgment, plaintiff does not cite *any* evidence of such a policy" (that is, a "uniform policy by

28  Allstate of refusing to pay for repairs to seatbelts").  Order at 21:9-10 (emphasis in original).  Once

- 13 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR
RELIEF FROM JUDGMENT UNDER FED. R. CIV. P. 60(b) AND OTHER RELIEF

1   again, however, this is presumably because Plaintiff's counsel failed to include citations to

2   additional evidence in Plaintiff's Response to Defendant's Statement of Undisputed Facts.  This,

3   too, was due to excusable neglect.  The record was, and is, replete with evidence of such a policy.

4   Citations to that evidence are provided now in Plaintiff's proposed Corrected Statement of Disputed

5   Material Facts, filed concurrently herewith.  To summarize:

6           Allstate's automated estimating and claims handling software prohibits inclusion of the

7   necessary cost of parts and labor for the inspection and replacement of seat belts in estimates

8   prepared by Allstate's auto property adjusters.  Allstate uniformly utilizes software that prohibits

9   including the cost of labor or parts necessary to inspect and replace seat belts.  Neither the Legacy

10  Claim Portfolio nor the NexGen computer software utilized uniformly by all Allstate's auto

11  property adjusters include seat belts as a defined area of damage.  Kelsh Depo. 73:5-7 (Index of

12  Evidence filed 04/25/11, Ex. K).  In addition, the Audatex estimating software and its precursor,

13  PenPro, do not have pre-defined labor operations for the inspection or replacement of seat belts.

14  Lowell Depo 31:2-11, 31:21-32:3 (Index of Evidence filed 04/25/11, Ex. O).  The Audatex

15  software does not prompt an estimator to inspect seat belts (Lencioni Depo. 180: 13-23 (Index of

16  Evidence filed 04/25/11, Ex. E)) nor does it provide a matrix indicating what parts of a seat belt

17  must be inspected or replaced following a collision where airbags do not deploy.  Lencioni Depo.

18  121:25-122:12 (Index of Evidence filed 04/25/11, Ex. E).  Thus, Allstate had no intention of

19  honoring its contractual responsibilities with regard to inspection, repair or replacement of the

20  seatbelt system.  Declaration of James Mathis filed Apr. 24, 2011 (Dock. No. 232) ¶¶ 89-97.  While

21          The evidence also establishes triable issues of fact that Allstate committed fraud by

22  omission.  As established by Plaintiff's expert James Mathis, the insurance policy is a contract of

23  adhesion where Allstate is in a superior position of authority and bargaining; thus, Allstate owes a

24  heightened duty to their policyholders.  Mathis Decl. ¶ 89.  In light of this unequal bargaining

25  power, the insured has no choice but to depend on the good faith and performance of the insurer.

26  *Id.*  Allstate assured policyholders and potential policyholders that Allstate would restore their

27  vehicles to their pre-accident condition.   Mathis Decl. ¶ 90.  Instead, Allstate instituted systems in

28  which necessary safety components, such as seatbelts, were not being inspected, tested or replaced.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR
RELIEF FROM JUDGMENT UNDER FED. R. CIV. P. 60(b) AND OTHER RELIEF

1   Mathis Decl. ¶ 91.  In so doing, Allstate placed its interests for profit above concern for safety and

2   the policyholders' rights under the policy.  *Id.*  Allstate concealed and misrepresented its practice of

3   refusing to properly inspect and repair seatbelts in order to sell said policy to the California public.

4   Mathis Decl. ¶ 92.  Additionally, Allstate's standardized estimates fail to inform policyholders of

5   the dangers associated with failing to properly inspect or replace seatbelts.  Mathis Decl. ¶ 93.

6   Allstate could have warned of these dangers using boilerplate language in the Allstate standardized

7   estimates, similar to the way in which insurers warn about using non-OEM parts.  Mathis Decl. ¶

8   93; Ex. A. [York 04/25/11 Decl.], ¶ 6 (pp. A0024-A0025).  Without warning its policyholders of

9   the risks associated with a failure to inspect seat belts, Allstate withholds necessary information that

10  is material to the insured's understanding of their rights under the insurance policy.  Mathis Decl. ¶

11  94.

12          Additionally, the evidence shows that Allstate's marketing materials further perpetuate

13  Allstate's fraud and misrepresentation.  Mathis Decl. ¶ 95.  Allstate's marketing materials boast:

14  "you're in GOOD HANDS with Allstate," yet are silent as to Allstate's position on repair and

15  inspection of seatbelts.  *Id.*  Allstate's scheme to deceive policyholders was conceived solely for the

16  purpose of profiting and at the risk of injury and possible death to its policyholders and the general

17  public by cutting the cost of repairing vehicles. Mathis Decl. ¶ 96.  Mr. Mathis further testified as to

18  the fraud perpetrated upon Ms. Watts by Allstate's deceptive practices.  Mathis Decl. ¶¶ 95-97.

19  Based on Mr. Mathis' expert review, Allstate's fraudulent marketing materials induced Mr. Watts

20  to obtain an insurance policy with Allstate.  Mathis Decl. ¶ 97.  Through said marketing materials,

21  Mr. Watts believed that if his vehicle were involved in an accident, his vehicle, including his seat

22  belts, would be inspected and restored to a pre-loss condition.  Mathis Decl. ¶ 97.  In fact, Mr.

23  Watts' was not wrong in so expecting.  Thomas M. Perrett, Senior Performance Specialist and

24  Trainer at Allstate's Tech-Cor, testified that inspection of the seat belt systems following a collision

25  would be covered in direct or accidental loss under the policy.  Mathis Decl. ¶ 97; Index of

26  Evidence filed 04/22/11, Ex. F [Perrett Depo] 231:5-11.  Unfortunately, Mr. Watts' expectations

27  were dissolved when—despite months of premium payments—Allstate denied his request for a seat

28  belt inspection and he was forced to purchase replacement seat belts out of pocket.  Rather than

- 15 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR
RELIEF FROM JUDGMENT UNDER FED. R. CIV. P. 60(b) AND OTHER RELIEF

1  receiving the benefits he was due under the policy, Mr. Watts was left unprotected and forced to

2  purchase seat belts independently so as to ensure his safety and the safety of the occupants of his

3  vehicle.  As such, Plaintiff presented triable issues of material fact establishing that Plaintiff

4  suffered harm from Allstate's fraud.

5        In its Order, the Court held that "plaintiff in this case cannot prove any damages from

6  Allstate's allegedly fraudulent statements" based on its earlier determination that "Mr. Watts'

7  vehicle was indeed restored to its pre-loss condition [because] the seatbelts were undamaged."

8  Order at 21:16-17, 22:1-3.  However, as explained above, Ms. Browne's declaration, coupled with

9  other evidence, shows that Mr. Watts' seatbelts *were* damaged and should have been replaced,

10  creating a genuine issue of fact on that point.  This declaration likewise creates a genuine issue of

11  fact as to whether Plaintiff suffered damage from Allstate's fraud.

12        The above evidence establishes genuine issues of material fact to support Plaintiff's fraud

13  cause of action.  In the interest of justice, Plaintiff respectfully requests relief under Rule 60(b),

14  along with permission to file corrected Statements to reflect the evidence timely filed with his

15  Opposition, under Rule 56(e).

16                    **IV.        CONCLUSION**

17        Defendants' gamesmanship and Plaintiff's counsel's excusable neglect should not bar

18  Plaintiff from presenting his facts and evidence to the Court for consideration.  For the reasons

19  discussed above, Plaintiff respectfully asks the Court to grant relief under Rule 60(b), permit the

20  filling of corrected Statements under Rule 56(e), and/or grant reconsideration under Local Rule

21  230(j).  Plaintiff further respectfully asks the Court to enter a new and different order denying

22  ////

23  ////

24  ////

25  ////

26  ////

27  ////

28  ////

- 16 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR
RELIEF FROM JUDGMENT UNDER FED. R. CIV. P. 60(b) AND OTHER RELIEF

Allstate's motion for summary judgment of plaintiff's breach of contract, insurance bad faith, fraud, and UCL claims (Plaintiff's first, second, third, fourth and fifth causes of action).

Dated: June 9, 2011                          Respectfully submitted,

By: _____
Wendy C. York (SBN 166864)
Jennifer B. Euler (SBN 232378)
YORK LAW CORPORATION

Kimberly A. Kralowec (SBN 163158)
Elizabeth I. Newman (SBN 257329)
THE KRALOWEC LAW GROUP

Attorneys for Plaintiff Robert Watts and the
Putative Class

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR
RELIEF FROM JUDGMENT UNDER FED. R. CIV. P. 60(b) AND OTHER RELIEF

| | |
|---|---|
| COURT: | United States District Court for the Eastern District of California |
| CASE NO. | 2:08-CV-01877-LKK-GGH |
| CASE NAME: | **Robert Watts v. Allstate Indemnity Company, et al.** |

## PROOF OF SERVICE

I am a citizen of the United States, employed in the County of Sacramento, State of California. My business address is 1111 Exposition Boulevard, Building 500, Sacramento CA 95815. I am over the age of 18 years and not a party to the above-entitled action.

I am readily familiar with York Law Corporation's practice for collection and processing of correspondence for mailing with the United States Postal Service. Pursuant to said practice, each document is placed in an envelope, the envelope is sealed, the appropriate postage is placed thereon and the sealed envelope is placed in the office mail receptacle. Each day's mail is collected and deposited in a U.S. mailbox at or before the close of each day's business. (CCP Section 1013a(3) or Fed.R.Civ.P.5(a) and 4.1; USDC (E.D. CA) L.R. 5-135(a).)

On June 9, 2011, I caused the within, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTIONS: (1) FOR RELIEF FROM AN ORDER AND FINAL JUDGMENT (FED. R. CIV. P. 60(B)); (2) FOR LEAVE TO FILE A CORRECTED STATEMENT OF DISPUTED MATERIAL FACTS (FED. R. CIV. P. 56(E)); AND/OR (3) FOR RECONSIDERATION (E.D. CAL. LOCAL RULE 230(J)), to be served via

**XX____ By E-Mail / Electronic Transmission--**
Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below: I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful:

Sonia Martin, Esq.
SNR Denton US LLP
525 Market St 26FL
San Francisco, CA, 94105-2708

Mark Hanover
SNR Denton US LLP
7800 Sears Tower, 233 South Wacker Dr.
Chicago, IL 60606-6404

Kimberly A. Kralowec
THE KRALOWEC LAW GROUP
188 The Embarcadero, Suite 800
San Francisco, California 94105

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that this Declaration is executed on June 9, 2011 at Sacramento, California. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_Kristine McFadden_
Kristine McFadden