1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                    FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   ROBERT WATTS, on behalf
     of himself individually and
11   all others similarly situated,

12                                        NO. CIV. S-08-1877 LKK/GGH
              Plaintiff,
13
         v.
14                                             O R D E R
     ALLSTATE INDEMNITY CO.,
15   an Illinois corporation, et al.,

16            Defendants.

17   _____/

18        This is a class-action lawsuit against Allstate Indemnity

19   Company ("Allstate") for five causes of action: Breach of Contract,

20   Bad Faith, Breach of Implied Covenant of Good Faith and Fair

21   Dealing, Fraud/Misrepresentation, and Unfair Competition. Plaintiff

22   has not yet moved for class certification. The claims arise from

23   Allstate's alleged practices regarding seatbelt inspection,

24   replacement, and/or repair after cars covered by Allstate's

25   insurance policies are involved in collisions. This court granted

26   summary judgment to defendant on all of plaintiff's claims on May

                                    1

12, 2011. Pending before the court are the following motions by plaintiff: a Rule 59(a) Motion for a New Trial, a Rule 59(e) Motion to Alter or Amend the Judgment, a Local Rule 230(j) Motion for Reconsideration, a Rule 60(b) Motion for Relief from Judgment; and a Rule 56(e) Motion for Leave to File a Corrected Statement of Disputed Facts. For the reasons stated herein, plaintiff's motions are GRANTED in part and DENIED in part.

## I. Background

### A. Factual Background

Plaintiff Robert Watts purchased a car insurance policy from defendant Allstate Indemnity Company ("Allstate") in 2004. Depo. of Robert Watts ("Watts Depo") 19:7-14, Ex. B of Defs.' Mot. for. Summary J., ECF No. 202-2. The policy provides that "Allstate will pay for direct and accidental loss to [plaintiff's] insured auto or a non-owned auto. . . from a collision with another object or by upset of that auto or trailer." Allstate Auto Insurance Policy ("Policy") 18, Pl.'s Ex. A, ECF No. 211-1.

On March 29, 2006, plaintiff's 2005 Honda Civic was involved in a collision while it was being driven by plaintiff's wife. During the accident, both the driver and the front-seat passenger were restrained by their seat belts. As a result of the accident, the front seat passenger suffered a fractured rib, and the driver suffered from serious neck injuries. At the time of the collision, plaintiff was insured under the car insurance policy issued by Allstate. Following the accident, plaintiff arranged for the vehicle tow to Artistic Collision, a garage of plaintiff's own

1  choosing, and not part of Allstate's direct repair programs. Watts

2  Depo 31:15. On March 30, 2006, Artistic Collision Shop Manager

3  Bryan Welsh prepared a "visible damage quote." Depo. of Bryan Welsh

4  ("Welsh Depo") 14:11-14. Ex. C of Defs.' Mot. for. Summary J., ECF

5  No. 202-4. The visible damage quote did not include any amount for

6  inspection, repair, or replacement of the seatbelts. Mr. Welsh

7  testified that he did not recall inspecting the seatbelts. Id. at

8  17.

9      Plaintiff then presented a claim to Allstate for repairs to

10  the vehicles. On March 31, 2006, Allstate adjuster Elio Lencioni

11  prepared an estimate for the repair. Mr. Lencioni's estimate did

12  not include any amount for inspection or repair of plaintiff's

13  seatbelts, although Lenocioni testified that it would have been his

14  custom and practice to inspect the seatbelt for "fraying, twisting,

15  any deformation, any stitching that was coming loose," to "pull

16  [the seatbelt] hard to see if it locks," to see if it goes back to

17  where it is supposed to go. And then to insert it in the buckle

18  make sure that it inserts in the buckle and it releases from the

19  buckle, . . . as it's supposed to." Depo. of Elio Lencioni 148,

20  Def.'s Ex. D. Mr. Lencioni stated that several circumstances would

21  prompt him to conduct the type of inspection describe above,

22  including any time there was "significant front-end damage" to the

23  vehicle, and "if it's a significant impact of any kind." Id. at

24  143-144. Mr. Lencioni clarified that "a significant impact would

25  be. . . a hard hit," and stated that if he saw that kind of impact,

26  he "would look at the seatbelts." Id. at 144:12-18.

1    Artistic Collision then repaired the car in accordance with
2    Mr. Lencioni's estimate. Artistic Collision did not replace the
3    vehicle's seatbelts. Allstate then paid Artistic Collision for the
4    repairs. Welsh Depo 24.
5        At some point between the time of the accident and September
6    18, 2007, plaintiff reviewed the owner's manual issued by Honda for
7    his vehicle. Watts Depo 75:13. In the owner's manual, plaintiff
8    read that seatbelts should be replaced in all vehicles involved in
9    serious collisions. Watts Depo 83:6. On September 18, 2007,
10   plaintiff sent a letter to Allstate that stated, among other
11   things, "we have several concerns that we believe need further
12   repair. . . this was a major frontal impact. The damage to the car
13   exceeded $6500 and both driver and passenger sustained injuries.
14   The airbags did not deploy and we are requesting that the airbag
15   sensors be inspected to ensure that they are operating correctly.
16   We are also requesting that the seatbelt tensioners be replaced."
17   Watts Depo 66:8-13, Ex. 27 ("September 18 Letter").
18       In response, Allstate adjuster Tina Parker directed plaintiff
19   to contact Artistic Collision or the Bureau of Automotive Repairs.
20       Plaintiff filed his complaint in this action on February 29,
21   2008. On April 30, 2008 Allstate demanded an appraisal of the loss
22   pursuant to the Appraisal Clause in the Policy. Martin Decl. Ex.
23   A 2, Ex. 1.
24       In May, 2008, plaintiff took his vehicle to the Elk Grove
25   Honda dealership to have the seatbelts replaced based on the
26   recommendation in the Honda Owner's Manual. Watts Depo. 84:1-7. Mr.

4

Watts did not ask the dealership to inspect the seatbelts before replacing them. Id. at 84. Plaintiff paid the Honda dealership $1029 to replace the seatbelts, and was not reimbursed for the cost by Allstate.

In addition to the specific facts surrounding plaintiff's collision and his claim to Allstate, plaintiff alleges that Allstate had a general scheme or policy to "increase profitability by refusing to replace, repair, or inspect seatbelts in it's policyholders' vehicles that were damaged and made unsafe in automobile collisions." Second Amended Complaint 5:1-2.

**B. Procedural History**

Plaintiff's Second Amended Complaint, filed on April 20, 2009, asserts six causes of action against defendant Allstate on behalf of similarly situated plaintiffs: (1) Breach of Contract, (2) Bad Faith, (3) Breach of the Implied Covenant of Good Faith and Fair Dealing, (4) Fraud/Misrepresentation, (5) Unfair Competition, and (6) RICO violations. This court previously dismissed plaintiff's RICO claim. See July 1, 2009 Order, ECF No. 79.

**i. The May Order**

On May 12, 2011, this court granted defendant's motion for summary judgment on all claims, and entered judgment in favor of defendant. May 12, 2011 Order, ECF No. 255 ("May Order"). The May order concluded that plaintiff had not demonstrated a genuine issue of material fact concerning whether his seatbelts were actually damaged in the accident or whether Allstate was contractually obligated to replace seatbelts that were in use during a serious

1  collision, whenever the vehicle's owner's manual recommends
2  replacement.

3      In the order granting summary judgment to defendant, this
4  court held that plaintiff had not presented evidence sufficient to
5  rebut defendant's evidence that "the seatbelt assemblies were in
6  superb condition." May Order 12 (quoting Decl. Davee). The court
7  held that plaintiff's evidence, consisting of plaintiff's wife's
8  declaration that the seatbelt occasionally got stuck or was loose
9  and an expert declaration that simply cited plaintiff's wife's
10 declaration, did not effectively rebut defendant's technical
11 expert's conclusion that the seatbelts were undamaged. See May
12 Order 13:15-18.

13     The order additionally analyzed whether there was a triable
14 issue as to whether the defendant breached its obligation by
15 failing to have the undamaged seatbelts replaced. The court held
16 that "such an obligation may be present if the Policy is ambiguous,
17 and if. . . at the time the Policy was purchased, Allstate believed
18 that the policyholder's understanding was that Allstate would
19 adhere to the owner's manual recommendation when paying to restore
20 a vehicle to it's pre-accident condition." May Order 14:13-18. The
21 court then evaluated the evidence that might have supported an
22 inference that Allstate intended to bind itself to replace
23 seatbelts in accordance with owner's manual recommendations. The
24 court found that plaintiff's proffered evidence, including
25 deposition testimony of Allstate's senior training specialist
26 Thomas Parrett and portions of the training materials that

reference the owner's manual, was not sufficient to show that Allstate intended to bind itself to adhere to the owner's manuals. The court noted that the training material's recommendation that adjusters consult owner's manuals for additional information "is hardly the equivalent of being bound by that manual." May Order 16, n. 4.

The court granted summary judgment to defendant on all of plaintiff's claims.

## ii. The Pending Motions

On June 9, 2011, plaintiff filed two documents with the court. In one document, ECF No. 260, plaintiff moves for a new trial (Fed. R. Civ. P. 59(a)),[1] alteration or amendment of the May order (Fed. R. Civ. P. 59(e)), and reconsideration of the May Order (Local Rule 230(j)). In the second document, ECF No. 266, plaintiff moves for relief from the May Order (Fed. R. Civ. P. 60(b)), leave to file a corrected statement of disputed material facts (Fed. R. Civ. P. 56(e)), and/or reconsideration of the May Order.

////

////

---

[1] For reasons not understood by the court, plaintiff has moved for a new trial under Fed. R. Civ. P. 59(a), even though there has not been a trial in this case. Plaintiff moves for a new trial on the basis of newly discovered evidence, which is also grounds for relief from judgment under Fed. R. Civ. P. 60(b)(2) Since "the same standard applies for establishing this ground for relief whether the motion is under Rule 59 or 60(b)(2)," 11 Wright & Miller Federal Practice & Procedure § 2808 (2d ed. 1995), the court construes plaintiff's Rule 59(a) motion for a new trial based on newly discovered evidence as a Rule 60(b)(2) motion for relief from judgment.

**II. Standards**

**A. Standard for Rule 60(b) Relief from Judgment**

Federal Rule of Civil Procedure 60(b) provides: "On motion and just terms, the court may relieve a party . . . from a final judgment" in the case of mistake or excusable neglect, newly discovered evidence, fraud, a judgment that is void, satisfaction of the judgment, or for any other reason that justifies relief. Fed. R. Civ. P. 60(b). Rule 60(b) "attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done." <u>Delay v. Gordon</u>, 475 F.3d 1039, 1044 (9th Cir, 2007)(*quoting* 11 Wright & Miller Federal Practice & Procedure § 2851 (2d ed. 1995). Rule 60(b) may only be used to set aside a prior judgment, and not to grant affirmative relief. <u>Id.</u>

**B. Standard for Altering or Amending the Judgment**

A party moving under Rule 59(e) or Rule 60(b) on the basis of newly discovered evidence must show that the evidence (1) existed at the time of the trial, (2) could not have been discovered through due diligence, and (3) was of such magnitude that production of it earlier would have been likely to change the disposition of the case. <u>Jones v. Aero/Chem Corp.</u>, 921 F.2d 875, 878 (9th Cir. 1990)(internal citations omitted).

**C. Standard for Local Rule 230(j) Reconsideration**

Local Rule 230(j) applies to motions for reconsideration filed in the Eastern District. That rule requires the movant to brief the court on, *inter alia*, "what new or different facts or circumstances

8

1  were not shown upon such prior motion, or what other grounds exist
2  for the motion; and why the facts or circumstances were not shown
3  at the time of the prior motion."

4  ### III. Analysis

5      Plaintiff asserts that relief from judgment is warranted in
6  this case based on plaintiff's counsel's excusable neglect (Fed.
7  R. Civ. P. 60(b)(1)) and that altering or amending the judgment
8  is warranted based on newly discovered evidence (Fed. R. Civ. P.
9  59(e), 60(b)(2)).

10 **A. Excusable Neglect**

11     Plaintiff argues that plaintiff's counsel's failure to
12 properly cite evidence in the opposition to defendant's summary
13 judgment motion, and the Statement of Disputed Facts in support
14 thereof, and plaintiff's counsel failure to properly authenticate
15 some evidence relied on in the opposition was excusable neglect
16 warranting relief from judgment under Rule 60(b). As an explanation
17 for these omissions, plaintiff states that defendant successfully
18 overwhelmed plaintiff's counsel by scheduling five expert
19 depositions during the time that plaintiff's counsel was preparing
20 the opposition to the summary judgment motion. Pl.'s Mot. for
21 Relief from Judgment 4:10-14. Plaintiff states that, due to
22 excusable neglect, plaintiff's counsel omitted citations to the
23 Declaration of Sandy Browne, "an expert with over 44 years of
24 experience in vehicle occupant safety and restraint systems." Pl.'s
25 Memo 9:1-2. In that declaration Ms. Browne states that the
26 seatbelts worn in the collision "are deemed damaged." Brown Decl.,

9

1  Ex. D to Pl.'s Opp'n to Summary Judgment, ECF No. 232. Plaintiff

2  argues that this evidence supports plaintiff's position that

3  Allstate breached its obligation when it did not replace

4  plaintiff's seatbelts. Ms. Browne's declaration was submitted as

5  an exhibit to plaintiff's opposition to summary judgment, but was

6  not cited in plaintiff's brief, nor in plaintiff's response to

7  defendant's separate statement of undisputed facts.

8      "The determination [of what constitutes excusable neglect

9  within the meaning of Bankruptcy Rule 9006(b)] is at bottom an

10 equitable one, taking account of all relevant circumstances

11 surrounding the party's omission. These include. . . the danger of

12 prejudice to the debtor, the length of the delay and its potential

13 impact on judicial proceedings, the reason for the delay, including

14 whether it was within the reasonable control of the movant, and

15 whether the movant acted in good faith." <u>Pioneer Inv. Servs. Co.</u>

16 <u>v. Brunswick Assocs. Ltd. Partnership</u>, 507 U.S. 380 (1993). In the

17 Ninth Circuit, this equitable test applies to Rule 60(b) motions

18 asserting excusable neglect. <u>Briones v. Riviera Hotel & Casino</u> 116

19 F.3d 379, 381 (9th Cir. 1997); <u>see also</u> <u>Bateman v. United States</u>

20 <u>Postal Serv.</u>, 231 F.3d 1220, 1224 (9th Cir. Cal. 2000)(holding that

21 the district "court abused its discretion because it failed to

22 conduct the equitable analysis laid out in Pioneer and Briones").

23 Plaintiff argues that the instant motion for relief from judgment

24 satisfies the <u>Pioneer</u> test adopted by the Ninth Circuit.

25 **i. Danger of prejudice to the opposing party**

26     Defendant states, without offering anything in the way of

10

analysis or explanation that "granting plaintiff a second chance
to relitigate defendants' summary judgment motion would prejudice
defendants." Def's Opp'n to Mot. for Relief from Judgment 8:16-17.
"Prejudice requires greater harm than simply that relief would
delay resolution of the case." Lemoge v. United States, 587 F.3d
1188, 1196 (9th Cir. 2009). The case cited by defendants for the
proposition that delay can constitute prejudice is distinguishable
from the instant case in that "the district court correctly
concluded that [plaintiff's] counsel had already caused 'numerous
and lengthy delays,' and that the defendants would be prejudiced
by the additional time and money a further delay in the proceedings
would cause." Cranmer v. Tyconic, Inc., 278 Fed. Appx. 744, 747
(9th Cir. 2008). Here, defendant does not make any allegations of
prior delays caused by plaintiff's counsel. Having found no danger
of prejudice to the defendant, beyond delay in the resolution of
the case, the court finds that this factor weighs in favor of
granting plaintiff's motion.

**ii. The length of the delay and its potential impact on the
proceedings**

     Plaintiff filed his Rule 60(b) motion with four weeks of the
court's order granting summary judgment. Rule 60(c) requires that
a motion for relief from judgment be brought "within a reasonable
time." Delays of similar length have been found to be reasonable.
See Laurino v. Syringa Gen. Hosp., 279 F.3d 750, 753 (9th Cir.
2002)(five weeks reasonable), Bateman, 231 F.3d at 1225 (finding
a delay of "a little more than one month" to be "minimal.").

1   Accordingly, the court finds that this factor weighs in favor of

2   granting plaintiff's motion.

3   **iii. The reason for the delay**

4       Although typically courts should "give little weight to the

5   fact that counsel was experiencing upheaval in this law practice,"

6   Pioneer, 507 U.S. at 380, "a party should not be deprived of the

7   opportunity to present the merits of the claim because of a

8   technical error or slight mistake by the party's attorney." Wright

9   & Miller Federal Practice & Procedure § 2858 (2d ed. 1995).

10       Here, plaintiff asserts that the delay was caused by

11   "defendant's strategic timing. . . aimed at overwhelming

12   plaintiff's counsel in an attempt to impair plaintiff's ability to

13   file his opposition to defendant's Motion for Summary Judgment."

14   Pl.'s Memo 7:17-19. Plaintiff states that defendant moved for, and

15   received an order from Magistrate Judge Newman on April 7, 2011,

16   requiring expert depositions to be completed before April 30, 2011.

17   See April 8, 2011 Order, ECF No. 200. The following day, defendants

18   moved for summary judgment, setting the motion for hearing on May

19   8, 2011. Plaintiff's opposition to the motion was due on April 25,

20   2011. Thus, between April 8, 2011 and April 25, 2011, plaintiff's

21   counsel was obligated to participate in five depositions and

22   prepare an opposition to the motion for summary judgment. Plaintiff

23   claims that the omission of key evidence and failure to properly

24   authenticate other evidence was the result of plaintiff's counsel

25   being overwhelmed by the compressed time table caused by defense

26   counsel's "gamesmanship." Pl.'s Memo 7. At no time did plaintiff

request that the court continue the summary judgment hearing, although defendant's opposition to this motion indicates that plaintiff did attempt to get a stipulation to continue the hearing.

Defendant states that it had attempted to schedule the expert depositions prior to seeking an order from Magistrate Judge Newman, but that plaintiff's counsel did not cooperate. Def.'s Opp'n 3. Further, defendant argues that plaintiff filed additional evidence in opposition to the summary judgment motion on May 5, 2011, after defendant filed its reply. Defendant argues that, given this extensive surreply submitted by plaintiff, plaintiff's counsel had plenty of time to correct the omissions before the hearing on the summary judgment motion.

The court finds, in its equitable discretion, that the compressed time table under which plaintiff's counsel was working while preparing the opposition to the summary judgement motion is an excusable reason for a delay in presenting the court with citations to evidence supporting plaintiff's position. This factor, therefore, weighs in favor of granting plaintiff's motion.

**iv. Whether the movant acted in good faith**

The court sees no evidence that plaintiff or his counsel has failed to act in good faith. It appears to the court that the omission of citations to Ms. Browne's declaration and plaintiff's failure to authenticate certain pieces of evidence were caused by, at worst, sloppiness on the part of plaintiff's counsel in preparing the opposition to summary judgment. Indeed, plaintiff's opposition appeared to the court to be less-than-complete at the

1  time it was filed.

2     Taking into account relevant circumstances surrounding the
3  plaintiff's omission, as set forth in Pioneer, supra, the court
4  finds that plaintiff's omissions were the result of excusable
5  neglect on the part of plaintiff's counsel.

6  **v. Whether the evidence omitted due to excusable neglect warrant**
7  **relief from the May Order**

8     Having found that excusable neglect led to the omission of the
9  citations to the Sandy Browne declaration, the court now turns to
10 whether that evidence changes the court's analysis of defendant's
11 summary judgment motion.

12    Plaintiff asserts that, due to excusable neglect, plaintiff's
13 counsel omitted citations to the Declaration of Sandy Browne, "an
14 expert with over 44 years of experience in vehicle occupant safety
15 and restraint systems." Pl.'s Memo 9:1-2. In that declaration Ms.
16 Browne states that the seatbelts worn in the collision "are deemed
17 damaged." Browne Decl., Ex. D to Pl.'s Opp'n to Summary Judgment,
18 ECF No. 232. According to Browne, when a seatbelt is in a
19 collision, the seat belt webbing becomes stretched and elongated,
20 and does not return to its previous elasticity. Id. If credited,
21 this testimony raises a triable issue as to whether the seatbelts
22 were actually damaged in the collision, and therefore whether
23 defendant breached its policy by failing to pay to replace the
24 seatbelts. Whether to credit the testimony turns on whether the
25 testimony is admissible under Fed. R. Evidence 702, which governs
26 the admissibility of expert testimony. The Supreme Court has set

forth the factors that a district court should consider in determining admissibility of expert testimony. Those factors are "(1) whether a theory or technique "can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) "the known or potential rate of error," and (4) whether it is generally accepted in the scientific community." <u>Wagner v. County of Maricopa</u>, 2012 U.S. App. LEXIS 4721 (9th Cir. 2012) (quoting <u>Daubert v. Merrell Dow Pharms.</u>, 509 U.S. 579 (1993)). The purpose of the factors is to determine whether the evidence is both reliable and relevant. The test is flexible, and the inquiry "must be tied to the facts of a particular case." <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 150 (1999), citing <u>Daubert</u>. "Whether <u>Daubert's</u> specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." <u>Kumho Tire Co.</u>, 526 U.S. at 153 (1999).

Plaintiff offers Browne's testimony in order to prove that Allstate was contractually obligated to pay for the replacement of the seat belts following the collision because the seat belts were "deemed damaged" and could not have returned to its original condition. The court now analyzes whether Browne's expert testimony on this point is reliable and relevant under the framework set forth in <u>Daubert</u> and <u>Kumho Tire</u>.

Ms. Browne is a former accident investigator with the National Transportation Safety Board and the National Highway Traffic Safety Administration. Browne Curriculum Vitae ("CV"), ECF No 233 at 13.

1   She has completed approximately 2000 hours of training in accident
2   investigation through the University of Southern California,
3   Stanford University, the Department of Transportation, and the
4   National Transportation Safety Board. That training included course
5   on "seat belt systems, and their construction, their performance,
6   their testing requirements, their failures, their inefficiencies,
7   and the biomechanical result of lap belts." Browne Depo. 36-37. She
8   has published dozens of articles on automobile accidents, including
9   on the performance of lap and shoulder belts in car accidents, and
10  has provided numerous trainings on car accidents to the California
11  Highway Patrol, including on restraint systems. In the course of
12  her experience as an investigator and as a consultant in seat belt
13  safety, Browne has personally inspected dozens of seat belts that
14  have been involved in car accidents.

15      Based on this experience and training, Browne testified that
16  in her opinion "once you load[2]-once you have an accident with a
17  sufficient dynamic to cause the occupant to load that seat belt
18  system, that it will not return to its original condition." Browne
19  Depo. 70. This opinion was based on her understanding of "the way
20  the system operates, the way the webbing looks after significant
21  loading, and the fact that the webbing system – the seatbelt is
22  designed to stretch." Id.

23      In her declaration, Browne asserted that her conclusion that
24  the seatbelts were damaged

25  ───────────────

26      [2] A seatbelt is "loaded" when an occupant has actually been
    restrained by the seatbelt system. Browne Depo. 73.

1    is further bolstered by the material I have reviewed
     relating to the Watts collision. Webbing loads occur
2    primarily in frontal collisions, such as experienced
     by the Watts vehicle. . . If a front collision
3    distorts the frame or unibody of a vehicle, as occured
     here, one should assume that the webbing was loaded.
4    Also, medical records indicate that the driver. . .
     sustained injuries from the collision. Medical records
5    further indicate that the. . . passenger. . . impacted
     the shoulder harness of her seatbelt with sufficient
6    force to fracture her rib. . . Accordingly, this
     collision loaded the seatbelts and would have resulted
7    in at least the stretching of seatbelt webbing.
     Webbing, once loaded, does not return to its previous
8    elasticity.

9    Brown Decl. ¶ 28-30.

10       The court finds the Browne testimony to be reliable and

11   relevant. Ms. Browne's experience and training in biomechanics and

12   engineering is vast, and her conclusions are relevant to a core

13   issue in this case. Further, the court finds that the evidence

14   raises a triable issue on the factual question of whether the

15   Watts' seatbelts were damaged following the collision. Accordingly,

16   summary judgment for defendants is not appropriate on this issue,

17   plaintiff's motion for relief from judgment is GRANTED.

18   **B. Newly Discovered Evidence**

19       In addition to excusable neglect, plaintiff asserts that

20   relief from judgment is warranted because of newly discovered

21   evidence.[3] Rule 60(b)(2) provides that a could may grant relief

22   _____

23       [3] As previously noted, plaintiff's argument with respect to
     newly discovered evidence was made pursuant to a Motion for a New
24   Trial under Rule 59(b). Because there has been no trial in this
     case, the court construes plaintiff's Rule 59(b) motion as a Motion
25   for Relief from Judgment under Rule 60(b)(2), which utilizes the
     same test as that for a Rule 59(b) motion based on newly discovered
26   evidence.

                                    17

from judgment if there is "newly discovered evidence that, with reasonable diligence could not have been discovered in time to move for a new trial under Rule 59(b)." In addition, a judgment may be altered or amended under Fed. R. Civ. P. 59(e) based on newly discovered evidence, <u>Dixon v. Wallowa County</u>, 336 F.3d 1013, 1022 (9th Cir. 2003), and plaintiff has moved for Rule 59(e) relief.

A party moving under Rule 59(e) or Rule 60(b) on the basis of newly discovered evidence must show that the evidence (1) existed at the time of the trial, (2) could not have been discovered through due diligence, and (3) was of such magnitude that production of it earlier would have been likely to change the disposition of the case. <u>Jones v. Aero/Chem Corp.</u>, 921 F.2d 875, 878 (9th Cir. 1990)(internal citations omitted). Plaintiff argues that deposition testimony by Allstate's expert Robert Lange is newly discovered evidence that creates a genuine issue of material fact that would have defeated summary judgment.

**a. Whether the evidence existed at the time of the trial**

Plaintiff states that Mr. Lange's deposition was taken on May 2, 2011, before the court's May 12, 2011 order granting summary judgment to defendant. Pl.'s Mot. for a New Trial 5:22. Although the transcript of the deposition was not available until after the grant of summary judgment, the testimony itself was. Therefore, the court concludes that the evidence existed at the time of trial.

**ii. Whether the evidence could not have been discovered through due diligence**

Plaintiff's opposition to summary judgment was submitted one

18

week prior to the deposition of Mr. Lange on May 2, 2011. Plaintiff contends that defendant's counsel "concealed Mr. Lange's testimony by refusing to make him available for deposition until after plaintiff's opposition to summary judgment was due. Pl.s Mot. for a New Trial 2:16-17. At the time that the parties scheduled Mr. Lange's deposition, defendant had not yet filed its summary judgment motion, and plaintiff did not yet know that the deposition would take place after the opposition's April 25, 2011 due date.

Defendant counters that the deposition testimony was actually in plaintiff's possession before the court's May 12 order granting summary judgment, and that plaintiff filed a surreply on May 5, 2011 after taking Mr. Lange's deposition, but did not include evidence from Mr. Lange's deposition in that filing. Further, defendant asserts that it attempted to schedule all expert depositions earlier, but that plaintiff's counsel refused to cooperate. This refusal by plaintiff's counsel, according to defendant, negates any claim of due diligence by plaintiff.

The court concludes that plaintiff acted with due diligence. At the time the depositions were scheduled, plaintiff did not know that defendant was going to schedule a motion for summary judgment. Even after the summary judgment motion was filed and plaintiff became aware that Mr. Lange's deposition would take place after the opposition was due, plaintiff did not know that Mr. Lange's deposition would produce strong enough evidence to warrant requesting an extension of the deadline for the filing of the opposition.

**iii. Whether the evidence was of such magnitude that production of it earlier would have been likely to change the disposition of the case.**

Plaintiff's offered newly discovered evidence purportedly creates a genuine issue of material fact as to whether Allstate believed that policyholders would expect it to adhere to the owner's manual's recommendations when restoring a vehicle to its pre-accident condition. Plaintiff states that Mr. Lange, an expert on collision repair industry standards, testified at his deposition that when a manufacturer's service manual is silent on whether to replace seatbelts after a collision, members of the repair industry have to look at the owner's manual.

The court concludes that Mr. Lange's deposition testimony is not evidence of a contractual obligation on the part of Allstate to replace seatbelts in every collision according to the owner's manual. In his deposition, Mr. Lange stated, "my view is that the information that is useful and appropriate for consideration with respect to post-collision treatment of safety belts would be embedded in service manuals, not owner's manuals." Lange Depo. 147:16-19. Mr. Lange went on to state "it's my opinion that the primary source [for determination of seat belt replacement or inspection] should be the repair service manual. If there's nothing there, then obviously the repair industry has to go elsewhere. Owners' manuals *may* be the places that an operator would look." Id. at 149:9-14 (emphasis added).

In this case, the vehicle service manual stated that the

1  seatbelts should be replaced in every collision in which the
2  airbags had been deployed, whereas the vehicle owner's manual
3  stated that seatbelts should be replaced in all vehicles involved
4  in serious collisions. Plaintiff characterizes the vehicle service
5  manual as being silent on what to do in the event of a serious
6  collision in which the airbags do not deploy. Plaintiff argues
7  that, given the vehicle service manual's "silence" on this issue,
8  Allstate was contractually bound to adhere to the owner's manual
9  recommendations.

10     The court finds this position to be untenable. Mr. Lange's
11  deposition testimony does not show such a contractual obligation.
12  There was no uniform custom within the automobile repair industry
13  to adhere to the owner's manual. In fact, Mr. Lange stated
14  explicitly that there is no uniform process within the automobile
15  repair industry for determining what stems should be taken to
16  determine seatbelt replacement following a collision. See Lange
17  Depo. 146:9-14.

18     The court's inquiry on this question is for the purpose of
19  determining what Allstate's contractual obligations were with
20  respect to replacing seatbelts following a serious collision, such
21  as the one plaintiff's insured car was involved in. Plaintiff's
22  evidence shows that there is a variety of sources that vehicle
23  repair professionals consult when determining how to restore cars
24  following collisions. Plaintiff has not produced any evidence that
25  Allstate's belief was that its clients would expect that their
26  insure cars to be restored according to owner's manual

1    recommendations.

2        Accordingly, the court concludes that Mr. Lange's testimony

3    is not of such a magnitude that it would change the disposition of

4    the court's summary judgment order.

5                           **IV. Conclusion**

6        For the reasons discussed herein, the court ORDERS as

7    follows:

8            [1] Plaintiff's Motions, ECF No. 260 and ECF No. 266

9            are GRANTED in part and DENIED in part.

10           [2] Plaintiff's Motion for Relief from Judgment on the

11           basis of newly discovered evidence is DENIED.

12           [3] Plaintiff's Motion for Relief from Judgment on the

13           basis of excusable neglect is GRANTED. Plaintiff is

14           GRANTED relief from the court's May 12, 2011 order,

15           ECF No. 255, except on the issue as to whether

16           Allstate breached its obligations by failing to pay to

17           have the seatbelts replaced even if they were

18           undamaged. The court's conclusion, in the May Order,

19           that the "insurance policy did not require Allstate to

20           replace plaintiff's undamaged seatbelts following the

21           collision" remains unaltered.

22       IT IS SO ORDERED.

23       DATED:  March 30, 2012.

                                    LAWRENCE K. KARLTON
24                                  SENIOR JUDGE
                                    UNITED STATES DISTRICT COURT
25

26

                                    22